**FILED**

Norair and Goharik Saakian, *Plaintiff Pro Per*
13606 Delano Street
Van Nuys, CA. 91401
Fax: (404) 393-3134
Without Counsel
NO PHONE #

2010 SEP 10  PM 12: 14

CLERK. U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

Fee Paid

UNITED STATES DISTRICT COURT OF CALIFORNIA
CENTRAL DIVISION

**CV10-06742-DMG (Ex)**

| | |
|---|---|
| NORAIR SAAKIAN and GOHARIK SAAKIAN, | CASE NO.: |
| Plaintiff(s), | VERIFIED COMPLAINT FOR DAMAGES: |
| vs. | COUNT I.   QUIET TITLE ACTION, DECLARATORY JUDGMENT PURUSANT TO F.R.C.P. 57 |
| BANK OF AMERICAN HOME LOANS, *Fictitious Party* | COUNT II.  VIOLATION OF F.D.C.P.A |
| BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK as Trustee for Loan Trust 2007-HY3 Mortgage Pass through Certificates Series 2007-HY3., *an en legis being used to conceal fraud* | COUNT III. VIOLATION OF CAL.CIVIL CODE 2932.5 |
| | COUNT IV. VIOLATION OF CAL.CIV CODE 2923.5 |
| | COUNT V.   VIOLATION OF CAL.CIV CODE 2015.5 |
| RECONTRUST COMPANY., *fraudulent Trustee* | COUNT VI. VIOLATION OF CAL.PENAL CODE §115 |
| | COUNT VII. VIOLATION OF CAL.PENAL CODE§530.5 |
| MERS (Mortgage Electronic Registration System) now doing business as XYX Corporation *Fraudulent Entity* | COUNT VIII.DEFECTIVE DEED OF TRUST |
| | COUNT IX.  VIOLATION OF RICO ACT |
| | COUNT X.   VIOLATION USC TITLE 18, SECTION 241, |
| AND DOES (Investors) 1-10 | COUNT XI.  VIOLATION USC TITLE 18, SECTION 242, |
| Defendant(s), | COUNT XII.  VIOLATION OF R.E.S.P.A DECLARATORY RELIEF |
| | (TRIAL BY JURY DEMANDED) |

COMES NOW, the Plaintiff (s) Noriair and Goharik Saakian , a husband and wife duly situated in the state of California Republic. Plaintiff(s) are the owners of record for the property knows as 13606 Delano Street, Van Nuys CA 91401, further described as APN No: 2330-017-006, Instrument No: 20070039269.

## PLAINTIFF CLAIM AND CLAIM OF RIGHTS

Plaintiff(s) Norair and Goharik Saakian, hereby invokes the powers and protections of *Anastasoff v. U.S.*, 223 F3d 898, especially where it speaks to the Doctrine of Precedent. Plaintiff(s) requests that the court take judicial notice (Rule 201 of the Federal Rules of Evidence and California Rules of Evidence) of the enunciation of principles stated in *King v. Knoll* (No. 04-04149-JAR), *Whitney v. State of New Mexico* (113 F.3d 1170), *Haines v. Kerner* (404 U.S. 519), and *Platsky v. Central Intelligence Agency*, 953 F2d 25; and Plaintiff hereby invokes the powers and protections thereof, especially where they speak to the fact that Pro Se and In Propria Persona (Pro Per) litigants shall not be held to the same strict pleading standards as Bar authorized attorneys, and that they have the right to submit evidence of their claims to the courts for adjudication, and that where the courts dismiss said claims, the courts must provide curative instructions as to how to repair the paperwork and give leave or permission and adequate time to re-file.

Therefore, Plaintiff's hereby claims the substantial Due Process right to have Findings of Fact and Conclusions of Law published with any order of this Court. By Law and precedent and in accordance with the Supreme Court of the United States, *pro se* Pleadings MAY NOT be held to the same standard as a lawyer's and/or attorney's; and whose motions, pleadings and all papers may ONLY be judged by their function and never their form. *See:* Haines v. Kerner; Platsky v. CIA; Anastasoff v. United States; Litigants are to be held to less stringent pleading standards;

*See:* Haines v. Kerner, 404 U.S. 519-421; In re Haines: pro se litigants are held to less stringent pleading standards than admitted or licensed bar attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

*See also:* Platsky v. C.I.A., 953 f.2d. 25; In re Platsky: court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings.

*See also:* Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000); In re Anastasoff: litigants' constitutional (guaranteed) rights are violated when courts depart from precedent where parties are similarly situated.

Plaintiff's hereby claims the powers, protections and benefits of the Statute of Frauds Annotated, especially where it speaks to the fact that in order to have standing to sue on a debt or have a court consider the issue or for a court to have subject matter jurisdiction to provide relief

or a remedy the Defendant or moving party must prove the existence of a debt which may only be established by submission of the original contract, original promissory note or agreement in open court, on the record, as evidenced through the testimony of a competent fact witness with personal firsthand knowledge, under oath, and be subject to the test and "fire" of cross examination.

Additionally, Defendant(s) or moving party must prove it is the Holder in Due Course and that Plaintiff's signed the contract, note, or agreement with full knowledge of the true nature of the transaction, as required by state and federal law governing disclosure requirements. Further any party that asserts a claim upon Plaintiff's property must prove with specificity that Plaintiff's received equal value, as consideration to the contract, by demonstrating, possession of the original unaltered promissory note and under GAAP (Generally accepted Accounting Principles) how much value was given under GAAP rules to Plaintiff's, the source and the nature of the consideration (where in reality did it come from); in order to demonstrate that no fraud occurred in the inducement and that whomever the holder in due course purports to be, has a valid instrument to support a claim under any security agreement upon Plaintiff's property.

Plaintiff(s) hereby makes declaration of non-corporate status. Plaintiff(s) hereby makes declaration of domicile and revokes any previous declaration of domicile. Plaintiff(s) is domiciled in California State.

The Plaintiff's, the Affiant herein, does solemnly affirm that she is of lawful age, being of sound mind and competent to make this affidavit and willing to testify in open court; that the statements herein are from his own personal, firsthand knowledge of the information and facts contained herein and are true and correct in substance and in fact; and that those matters cited herein are believed to be true as reported and as further grounds for the relief sought.

Plaintiff's hereby states the claim for which relief can be granted pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) as follows:

## PLAINTIFF'S CLAIMS:

1.      Plaintiff is the **CREDITOR** in this matter.

2.      Defendant is the **DEBTOR** in this matter.

3.      **Defendant(s) is a Fictitious Payee.**

4.      Defendant(s) is not the **CREDITOR,** or a lawful **ASSIGNEE of the CREDITOR,** in this instant matter.

5.      Plaintiff's is not the DEBTOR in this matter.

6.      Defendant(s) is not **the Real Party in Interest** in this instant matter.

7.      Defendant(s) did NOT put Defendant's assets at risk in this instant matter and never loaned Plaintiff anything of substance.

8.      Defendant(s) secretly extended to Plaintiff's his own credit.

9.      Defendant(s) purposely destroyed the GENUINE ORIGINAL PROMISSORY NOTE to "securitize" the NOTE.

10.      Defendant's use of "*legalese*" in the mortgage documents as a means of converting Real Property from its true owner to Defendant is a criminal act of "conversion through fraudulent means" and therefore the mortgage   documents are evidence of a criminal act and cannot be used by this Court in this instant matter.
*(See: Black's Sixth; "Understand")*

11.      The United States has a primary mortgage Right and/or status on the real property in question and such CANNOT be circumvented by Defendant's fraudulent and unlawful mortgage.

12.      Defendant's has been paid in full for the "contract" in question.

13.      Defendant's will fail to join "all indispensible parties" as such joinder would be prima facie evidence of Defendant's fraudulent act of securitizing the "PROMISSORY NOTE."

14.      All "investors" involved in the securitization of the "Promissory Note" are indispensible parties to this action and MUST be joined by Defendant in any rebuttal, response, reply, answer, and/or the like by Defendant.

**15.** Defendant's is using a corporate entity and/or TRUST in furtherance of fraudulent acts.

**16.** Defendant's has no immunity for Defendant's fraudulent acts.

**17.** Defendant's is jointly and severally responsible for ALL of Plaintiff's losses, cost fees, and/or damages; *including without limitations,* emotional damages, punitive damages, inclusive of but not limited to: alienation of affection from: spouse, boy and/or girl "friend", friends, children, pets, co-worker(s), client(s), customer(s), and any and all other parties effected directly and or indirectly and/or collaterally even if caused by Plaintiff's inability to deal emotionally with the financial issues; as said issues are and have been caused by Defendant's fraudulent acts.

**18.** Defendant's knowingly, intelligently, and willfully separated the Deed of Trust and/or the mortgage from the Genuine Original Promissory Note and from the allonge.

Defendant(s) MUST rebut ANY and ALL ALLEGATIONS and/or CLAIMS with specificity, quoting facts and laws; or Defendant thereby stipulates Defendant agree with Plaintiff's ALLEGATIONS and/or CLAIMS; and Defendant forever forsake arguing against Plaintiff's allegations and/or claims in any court. Merely denying Plaintiff's allegations and/or claims are not sufficient to survive a Motion for Default and/or Summary judgment against Defendant(s).

Pursuant to F.R.C.P. Rule 8(d) and/or all allegations and/or claims made by Plaintiff's MUST therefore be accepted as true by this Court unless said allegations and/or claims are rebutted with a preponderance of the evidence by Defendant(s). Any and all such avowries and/or averments presented by Defendant must be *et hoc paratus est verificare* and done under penalty of perjury.

## JURISDICTION AND VENUE

Jurisdiction is proper as the parties reside in the State of California in the County of Los Angeles. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are corporations subject to personal jurisdiction in this district.

**PARTIES**

The Plaintiff in this action is named Norair and Goharik Saakian , a natural person who is domiciled in California State. The Plaintiff maintains a mailing address at 13606 Delano Street, Van Nuys, California [91401].

Defendant **BANK OF AMERICA HOME LOANS, N.A.**, is a corporation licensed and registered to conduct business in the State of California based on information from the Secretary of State of California (hereinafter referred to as an alleged ( "LENDER") claims an adverse estate or interest in the subject Property for the purposes of complying with the Quiet Title requirements of the California Code Annotated.

Defendant, Bank of America Home Loans (BAC) who purchased Countrywide Home Loans, who was the original lender and holder in due course. BAC has attempted to illegally foreclose on the subject property owned by the Plaintiff's. An investigation revealed that BAC is just a servicer, and therefore has NO right to conduct a foreclosure in its name.

Plaintiff's has proof that an alleged third entity Bank of New York Mellon, f/k/a, The Bank of New York as Trustee for the Alternative Loan Trust 2007-HY3, Mortgage Pass through Certificates, Series 2007-HY3, claims ownership of the Mortgage Note. Therefore among other things BAC has no standing to conduct a foreclosure since it obviously does not own the loan or mortgage. Numerous debt validation requests, Qualified Written requests pursuant to RESPA (Real Estate Settlement Procedure Act) had been sent to BAC and Recontrust Company. No legitimate response was provided to the Plaintiff(s).

Defendant **RECONTRUST COMPANY**, a limited liability company is believed to not be organized under the laws of the State of California, and is not registered as a Trust pursuant to (hereinafter referred to as "SERVICER") "Servicer" within the definition found within 26 U.S.C.§2605. This defendant also represents itself as a Trustee, however it is unknown to the Plaintiff's as to what Recontrust Company is a Trustee of, due to the fact this fictitious entity does not appear in the Deed of Trust.  Recontrust Company has committed numerous fraudulent acts, including attempting to hold an illegal foreclosure in the name of an entity that is not a

1   legitimate entity licensed in any state. Furthermore Recontrust lacks authority to commence any

2   foreclosure in the State of California. Recontrust through its document's appear to represent

3   itself as a debt collector, but at the same time acts in authority of a Trustee. Plaintiffs will show

    the court that Recontrust has committed multiple acts of fraud and crimes against the Plaintiff.

4

5        Defendant **MERS** (Mortgage Electronic Registration System) as business suspended

6   from doing business in the State of California, upon information and belief is as sham entity that

7   has claimed to have an interest in the subject property. Further MERS is listed in the original

8   Deed of Trust as a nominee beneficiary. The Plaintiff's was sent a Substitution of Trustee by

9   Recontrust Company that purports to transfer ownership to Recontrust Company as some sort of

10  Trustee.

         The facts will show that MERS had NO interest in the subject property, therefore it could
11
    not transfer any interest in the property and lack the authority to do so. Furthermore there have
12
    been multiple rulings by courts across the country that has adjudicated the matter and determined
13
    that MERS is indeed a fraudulent company. MERS is in fact being sued by the State of
14
    California for fraud among other crimes against the state and the citizens affected.
15

16       Defendant, **BANK of NEW YORK MELLON f/k/a, BANK of NEW YORK, as**

17  **Trustee for the Alternative Loan Trust 2007-HY3, Mortgage Pass through Certificates**

18  **Series 2007-HY3**. Plaintiff(s) upon information and belief will show that this is a fraudulent

19  Trust designed to facilitate the theft of the subject property. Furthermore the Plaintiff believes

20  that the defendant's has conspired to fraudulently and forcibly remove the Plaintiff from their

21  home. It should be known that this entity is not licensed in the State of California.

22
         Plaintiff's believed that Bank of New York Mellon as Trustee is indeed not the owner of
23
    the original mortgage note, and further has attempted to defraud the Plaintiff's by claiming an
24
    interest in the property.
25

26

27

28

## **FACTS**

Plaintiff's on December 12, 2006 entered into a mortgage contract with Countrywide Home Loans (now a defuncted company) the alleged original lender. Plaintiff's was a victim of a fraudulent loan by Countrywide Home Loans. In October 2008 the State of California sued Countrywide Home Loans for among other crimes fraud against all homeowners with loans done between the dates of 2001-2006 (see exhibits). As a part of the settlement with the State of California, Countrywide Home Loans who is now BAC must comply with the ruling of the California Superior Court Injunction. In that Countrywide Home Loans via BAC must immediately modify all loans of approximately 400,000 customers. Plaintiff has notified BAC twelve times that it had an obligation to modify the loan, BAC has not complied.

Since this the Plaintiff's has done a third party audit that has uncovered a plethora of crimes, fraudulent documentation and other elements mentioned in this Complaint. The Plaintiff will show from a preponderance of the evidence that the defendant's has violated multiple federal and state laws. The overwhelming evidence has caused severe damage to the defendant's.

Plaintiff's brings this case to the honorable court to preserve their property from the defendants who has maintained numerous fraudulent activities by sending forged documents and false notices in an attempt to illegally remove the Plaintiff's from their property. Plaintiff's COMPLAINT for Defendant's numerous acts of fraud upon the court, inclusive of any and all judicial and/or non-judicial proceedings, including without limitations, Defendant's purposeful fraud in attempting to appear as CREDITOR to the court, when in fact Defendant's is well aware that they are not the CREDITOR and, therefore, NOT the Real Party in interest in the foreclosure matter.

Plaintiff's hereby reserves ALL RIGHTS, including without limitations, the Right to join any and all other and/or new parties that Plaintiff may discover at any time during the proceeding.

It is now incumbent on this court to query Defendant(s) as to Defendant's lawful position in this instant matter.  If defendant's refusal to stipulate in open court that Defendant(s) is the

1  CREDITOR in this instant matter, then this court must remove defendant from this hearing

2  forthwith, as this court is here to settle a matter between a CREDITOR and a DEBTOR.

3       Accordingly, if the defendant is not the CREDITOR in this Matter, then Defendant has

4  thus stipulated that Plaintiff MUST be the CREDITOR in this matter.

5       Defendant's cannot be the CREDITOR in this instant matter as Defendant NEVER risked

6  any assets, nor is Defendant holding any assets.

7       No entity can be a CREDITOR if they don't hold the asset in question, [*i.e.: the NOTE*

8  *and/or the property*; and Mortgage Pass-through Trusts, *i.e. R.E.M.I.C., as defined in TITLE 26,*

9  *Subtitle A, CHAPTER 1, Subchapter M, PART II, §§ 850-862*] and cannot hold assets, for if they

10  do, their tax exempt status is violated and the Trust itself is void *ab initio*.

11       Defendant's MUST NOW inform this court, the I.R.S. and the S.E.C. of their status of

12  either being a CREDITOR or not being a CREDITOR.

13       Defendant's own acts of fraud upon this court, Plaintiff, and the public in general are the

14  single cause of this paradox and absent Defendant "stating the claim" they are the CREDITOR in

15  this matter, this court cannot hear from Defendant.

16       For this matter, Defendant is and/or may be: the listed Defendant, any and all parties

17  Defendant refuses to reveal to Plaintiff and/or this Court, irrespective of whether or not said

18  party and/or parties are known to this Court and/or Plaintiff and/or Defendant, the Corporate *ens*

19  *legis* entity Defendant is employed by and/or is an officer thereof, and/or any other party and/or

20  parties, indispensible or not, any and all other party and/or parties receiving any pecuniary gain

21  from through, and/or by Defendant's fraudulent act(s). Singular may be inclusive of plural and

22  plural may be inclusive of singular.

23       Plaintiff's hereby questions and refutes the authenticity of ALL dates and/or ALL

24  signatures by ALL parties on ALL documents, including without limitations, notarized

25  documents, "contracts", "deeds", "titles", affidavits, applications, transmittals and/or the like,

26  including without limitations the dates and/or signatures by notary publics, officers, employees,

and any and ALL parties attesting to any and ALL claims, facts, accounting, transfers, recordings, publications, and/or the like, etc.

Plaintiff's disavows any and ALL implied and/or conferred and/or inferred "understanding" of "*legalese*" terms now and at the time of the "signing" of any and ALL of the documents pertaining to this action.

Plaintiff's disavows any and ALL presumptions made by this Court, Defendant, and any and ALL other parties when said presumption may be detrimental to Plaintiff's interest and/or case.

Plaintiff's hereby demands ALL of Plaintiff's Rights be protected by this Court, including without limitations, State and federal constitutionally protected Rights, God given Rights, Civil Rights, Human Rights, Rights protected by Treaty(s), and/or ALL privileges and/or immunities, and/or the like.

Plaintiff's hereby demands that this Court refuse to commit, and act to prevent Defendant from committing, any and ALL acts barratrous in nature.

Plaintiff's hereby demands ALL applicable Rules of Court, Rules of Procedures, Laws, and/or Statutes be adhered to without preference for any party.

Plaintiff's makes this statement: "I sent Defendant a Qualified Written Request, a Written Notice of Loan/Credit Dispute, and a Notice of Loan Rescission, and Defendant did not respond which was Defendant's confession they knew they were committing fraud against me because they knew they were not the CREDITOR. If Defendant had responded then Defendant would have done so because they are the CREDITOR, but since Defendant did not respond as required by law for a CREDITOR to do, then Defendant has confessed Defendant is not the CREDITOR. That is how I discovered Defendant committed fraud against me."

If Defendant(s) attempts to fight this matter in court then Defendant knowingly, intelligently, and willfully must come to court without "clean hands."

Plaintiff comes to this court with "clean hands" and as a civilian and a laymen and attempts only to seek justice and equity in accordance with California law.

## COUNT I:
## QUIET TITLE ACTION

Plaintiffs reaffirm and re allege paragraphs above herein as if specifically set forth more fully herein below:

The property that is the subject of this action is located at 13606 Delano Street, Van Nuys CA 91401.

Property description is Tract No: 19529, in the City of Los Angeles, State of California as per Map filed in Book 547, Page(s) 9 and 11, APN No: 2330-017-006.

Plaintiff's is and at all times herein mentioned was the owner and/or entitled to possession of the property.

Plaintiff's is informed and believes and thereupon alleges that defendant's BAC, claims an interest in the property adverse to the Plaintiff's herein. However, the claim of said defendant's is without any right whatsoever, and said defendants have no legal or equitable right, claim, or interest in said property.

Plaintiff's therefore seeks a declaration that the title to the subject property is vested in Plaintiff's alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff's herein.

WHEREFORE, Plaintiff's prays for judgment against defendant(s) and each of them as follows:

1. For a declaratory judgment pursuant to F.R.C.P. 57.
2. An order compelling said defendant(s), and each of them, to transfer legal title and possession of the subject property to Plaintiff's herein.

3. For a declaration and determination that Plaintiff's is the rightful owner of title to the property and that defendant(s) herein, and each of them, be declared to have not estate, right, title or interest in said property.

4. For a judgment forever enjoining said defendant(s), and each of them, from claiming any estate, right, title or interest in said property.

5. For costs of suit herein incurred.

## COUNT II
## VIOLATION OF F.D.C.P.A

Defendant's BAC and Recontrust Company, are both guilty of violating the Fair Debt Collections Practices Act. Numerous debt verifications request were sent and no responses delivered.

## COUNT III.
## VIOLATION OF CAL.CIVIL CODE 2932.5
(Recording of an Assignment Prior to Foreclosure)

Defendants BAC and Recontrust Company are both guilty of violating California Civil Code 2932.5.

Cal. Civ. Code section 2932.5 provides a condition precedent for an assignee of the Deed of Trust prior to commencing a foreclosure:

Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee *if* the assignment is duly acknowledged and recorded. (Emphasis added).

Defendant's BAC, Recontrust Company, filed the Notice of Default prior to being assigned the Mortgage and Note.

Defendant's BAC, Recontrust Company, failed to record the assignment prior to commencing the foreclosure as such the Foreclosure was not conducted in accordance with Cal Civ. Code Sec 2924 and 2932.5.

1  Furthermore as an intentional act of fraud the defendant's filed a fraudulent Assignment

2  of Deed, assigned from MERS as a beneficiary of Countrywide Home Loans to Recontrust

3  Company. The court should take Judicial Notice that this assignment was illegally drafted more

   than 45 days after the Notice of Default. The court should take Notice that MERS has no

4  standing as a Nominee Lender, this having been the rulings of multiple courts statewide.

5  Most importantly the court should take Notice that at the time of this fraudulent

6  Assignment Countrywide Home Loans filed Bankruptcy in United States District Court of

7  California. This is significant as to how a corporation could assign property while it is actively in

8  a bankruptcy. Plaintiffs upon information and belief assert that this document is fraudulent.

9  **COUNT IV.**
   **VIOLATION OF CAL.CIVIL CODE 2923.5**

10  (Invalid Notice of Default)

11  Defendant's BAC and Recontrust Company are both guilty of providing false and forged

12  Notice of Default in violation of California Civil Code 2923.5.

13  There is in existence a certain written instrument which purports to be a Notice of Default

14  that is in the possession of Defendants, and each of them.

15  The written instrument alleged was procured as follows:

16  Defendant(s) cannot prove that it strictly complied with the tenets of *California Civil*

17  *Code Sections* 2923.5 and 2924 in order to maintain an action for possession pursuant to

    California Code of Civil Procedure section 1161. As of September 6, 2008, *California Civil*

18  *Code Section* 2923.5 applies to loans made from January 1, 2003, to December 31, 2007, and

19  loans secured by residential real property that are for owner-occupied residences. For purposes of

20  *Section* 2923.5, "owner-occupied" means that the residence is the principal residence of the

21  borrower. Prior to filing a Notice of Default, Section 293.5 of the California Civil Code provides

22  in pertinent part:

23  (1). *A trustee may not file a notice of default pursuant to Section 2924 until 30 days*

24  *after contact is made* as required by paragraph (2) or 30 days after satisfying the due diligence

25  requirements as described in subdivision (g).

26  (2). *An authorized agent shall contact the borrower* in person or by telephone *in order*

27  *to assess the borrower's financial situation and explore options for the borrower to avoid*

    *foreclosure.* During the initial contact, the mortgagee, beneficiary, or authorized agent shall

28  advise the borrower that he or she has the right to request a subsequent meeting and, if requested,

1   the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14

2   days.

3     (3). ***A notice of default filed pursuant to Section 2924 shall include a declaration from***

***the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried with***

4   ***due diligence to contact the borrower as required by this section***, or the borrower has

5   surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent.

6   

**COUNT V.**

7   **VIOLATION OF CAL.CIVIL CODE 2015.5**

8     Defendant's BAC and Recontrust Company are both guilty of filing false and forged

9   documents to the County Recorders office against the Plaintiff's.

10   **Invalid Declaration on Notice of Default and/or Notice of Trustee's Sale**

  The purpose of permitting a declaration under penalty of perjury, in lieu of a sworn

11   statement, is to help ensure that declarations contain a truthful factual representation and are

12   made in good faith. (In re Marriage of Reese & Guy,73 Cal. App. 4th 1214, 87 Cal. Rptr.2d 339

13   (4th Dist. 1999).

14     In addition to *California Civil Code §2923.5, California Code of Civil Procedure*

15   *§2015.5* states:

16     Whenever, under any law of this state or under any rule, regulation, order or requirement

17   made pursuant to the law of this state, any matter is required or permitted to be supported,

18   evidenced, established, or proved by the sworn statement, **declaration**, verification, certificate,

19   oath, or affidavit, in writing of the person making the same, such matter may with like force and

20   effect be supported, evidenced, established or proved by the unsworn statement, **declaration**,

21   verification, or certificate, in writing of such person which recites that is certified or **declared by**

**him or her to be true under penalty of perjury**, is subscribed by him or her, and (1) if

22   executed within this state, states the date and place of execution; (2) if executed at any place,

23   within or without this state, states the date of execution and that is so certified or declared under

24   the laws of the State of California. The certification or declaration must be in substantially the

25   following form:

26     (a). If executed within this state:

27   "I certify (or declare) under penalty of perjury that the foregoing is true and correct":

28   _____                    _____

(Date and Place)                                          (Signature)

For our purposes we need not look any farther than the Notice of Default to find that the Declaration, is not signed under penalty of perjury; as mandated by new Civil Code §2923.5(c), (Blum v. Superior Court (Copley Press Inc.) (2006)141, Cal.App.4th, 418, 45,Cal. Reptr. 3d, 902). The Declaration is merely a form declaration with a check box.

### No Personal Knowledge of Declarant

According to Giles v. Friendly Finance Co. of Biloxi, Inc,199, So. 2nd 265 (Miss.1967), "an affidavit on behalf of a corporation must show that it was made by an authorized officer or agent, and the officer him or herself must swear to the facts." Furthermore, in Giles v. County Dep't of Public Welfare of Marion County (Ind.App.1 Dist.1991) 579 N.E.2d 653, 654-655 states in pertinent part, "a person who verified a pleading to have personal knowledge or reasonable cause to believe the existence of the facts stated therein." Here, the Declaration for the Notice of Default by the agent does not state if the agent has personal knowledge and how he obtained this knowledge.

The proper function of an affidavit is to state facts, not conclusions, [1] and affidavits that merely state conclusions rather than facts are insufficient. [2] An affidavit must set forth facts and show affirmatively how the affiant obtained personal knowledge of those facts. Here, The Notice of Default does not have the required agent's personal knowledge of facts and if the Plaintiff alleged borrower was affirmatively contacted in person or by telephone to assess the Plaintiff's financial situation and explore options for the Plaintiff to avoid foreclosure. A simple check box next to the "facts" does not suffice. Furthermore, "it has been said that personal knowledge of facts asserted in an affidavit is not presumed from the mere positive averment of facts, but rather, a court should be shown how the affiant knew or could have known such facts, and, if there is no evidence from which the inference of personal knowledge can be drawn, then it is presumed that such does not exist.

[1] Lindley v. Midwest Pulmonary Consultants, P.C., 55 S.W.3d 906(Mo.Ct.,App.W.D.2001).
[2] Jaime v.St. Joseph Hosp. Foundation, 853 S.W.2d 604 (Tex. App. Houston 1st Dist. 1993).
[3] M.G.M., Grand Hotel, Inc. v.Castro, 8 S.W.3d 403(Tex. App.Corpus Chrisit 1999).

The declaration signed by agent does not state anywhere how he knew or could have known if Plaintiff was contacted in person or by telephone to explore different financial options. It is vague and ambiguous if he himself called plaintiff. This defendant did not adhere to the mandates laid out by congress before a foreclosure can be considered duly perfected. The Notice of Default states, "That by reason thereof, the present beneficiary under such deed of trust, has *executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such Deed of Trust and all documents evidencing obligations secured thereby,* and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." However, Defendants do not have the Deed of Trust, nor do they provide any documents evidencing obligations secured thereby. For the aforementioned reasons, the Notice of Default will be void as a matter of law.

## COUNT VI.
## VIOLATION OF CAL. PENAL CODE§115
### (Recording a False Document)

Defendant's BAC, and Recontrust Company are all guilty of violations of state and federal law, in that it intentionally with malice perpetuated the following crimes against the Plaintiff's as reference below:

Furthermore, according to California Penal Code§115 in pertinent part:

(a). Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

(b). Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section. In addition, California Evidence Code § 669 states in pertinent part:

(a). The failure of a person to exercise due care is presumed if:

(1) He violated a statute, ordinance, or regulation of a public entity;

[1] Bova v. Vinciguerra,139, A.D.2d 797, 526 N.Y. S.2d 671(3d Dep't 1988).

## COUNT VII.
## VIOLATION OF CALIFORNIA PENAL CODE 530.5
### (Identity Theft)

Defendants BAC and Recontrust Company upon information and belief has committed a violation of California Penal Code 530.5 against the Plaintiff's.

530.5. (a) Every person who willfully obtains personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense, and upon conviction therefore, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment in the state prison.

(b) In any case in which a person willfully obtains personal identifying information of another person, uses that information to commit a crime in addition to a violation of subdivision (a), and is convicted of that crime, the court records shall reflect that the person whose identity was falsely used to commit the crime did not commit the crime.

(c) (1) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person is guilty of a public offense, and upon conviction therefore, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment.

(2) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and who has previously been convicted of a violation of this section, upon conviction therefore shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment in the state prison.

(3) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of 10 or more other persons is guilty of a public offense, and upon conviction therefore, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment in the state prison.

(d) (1) Every person who, with the intent to defraud, sells, transfers, or conveys the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment in

the state prison.
  (2) Every person who, with actual knowledge that the personal
identifying information, as defined in subdivision (b) of Section
530.55, of a specific person will be used to commit a violation of
subdivision (a), sells, transfers, or conveys that same personal
identifying information is guilty of a public offense, and upon
conviction therefor, shall be punished by a fine, by imprisonment in
the state prison, or by both a fine and imprisonment.
  (e) Every person who commits mail theft, as defined in Section
1708 of Title 18 of the United States Code, is guilty of a public
offense, and upon conviction therefore shall be punished by a fine, by
imprisonment in a county jail not to exceed one year, or by both a
fine and imprisonment. Prosecution under this subdivision shall not
limit or preclude prosecution under any other provision of law,
including, but not limited to, subdivisions (a) to (c), inclusive, of
this section.

Here, as stated above the Declaration of Due Diligence as required by Section 2923.5 of

the California Civil Code is missing and/or improper for the Notice of Default. Therefore,

defendants are guilty of a felony for recording the Notice of Default with a false instrument

according to California Penal Code §115. Since Defendants have violated a statute, the failure of

them to exercise due care will be presumed.

The written instrument alleged in the Notice of Default was also procured as follows:

By an invalid sale conducted on the part of Defendant(s), and each of them, in violation

of statutes including, but not limited to: Plaintiff is informed and believes and thereupon alleges

that the NOTE was invalid and unenforceable due to the intentional and willful violations

including but, not limited to: California Civil Code 2924b etc. et seq., California Civil Code §§§

2924b(a), 2924b(d), 2924b(e) by failing and/or refusing to mail the Notice of Default within ten

business days to Plaintiff, by failing and/or refusing to post and mail the Notice of Default; by

failing and/or refusing to mail Plaintiff the Notice of Default within one month pursuant to

California Civil Code § 2924b (c (1), (2); by failing and/or refusing to properly set the sale date

pursuant to California Civil Code §2924f(b); by failing and/or refusing to publish the Notice of

Sale twenty days prior to the date set for sale pursuant to California Civil Code § 2924f(b); by

failing and/or refusing to record the Notice of Sale pursuant to California Civil Code § 2924g(d);

Since the enumerated law was effective as of September 06, 2008 the sale of the property at issue is invalid pursuant to *California Civil Code Sections* 2923.5 and 2924, and thus the Defendants' claim of title and allegation thereto is erroneous.

Plaintiff alleges that Defendant's, and each of them, willfully, wrongfully and without justification, and without privilege conducted an invalid, illegal and fraudulent foreclosure sale against the Plaintiff's property, thereby, slandering Plaintiff's title thereto, causing mental, emotional, and economic damages.

Furthermore, The California Foreclosure Prevention Act, states the following: The California Foreclosure Prevention Action became effective June 15, 2009. This new law delays the non-judicial foreclosure process by requiring an **additional 90-day delay (beyond the current three-month period) between recording a notice of default and a notice of stay for certain residential properties**. The law applies to:

1). Loans recorded between January 1, 2003 and January 1, 2008, inclusive,

2).The borrower occupied the property as her principal residence and occupied the property time the alleged loan became delinquent;

3). A Notice of Default has been recorded on the property; and

4).The alleged loan is secured by a first lien on residential property that is located in California.

In our case Plaintiff's Norair and Goharik Saakian property is their principal place of residence and their deed was dated on December 12, 2006. Therefore the California Foreclosure Prevention Action applies and they should be allowed an additional 90 days (plus the three-month period already) after Notice of Default is recorded.


The aforementioned Instrument directly impairs Plaintiff's right to possession and ownership of her Property.

### COUNT VIII.
### DEFECTIVE DEED

Plaintiff's has a defective Deed of Trust that fraudulently lists MERS as nominee beneficiary which is not legal. Furthermore the Deed of Trust can only be enforced by Countrywide Home Loans and no proper or legal assignment has been filed.

### COUNT IX.
### VIOLATION OF THE RICO ACT

In Federal District Court the borrower may have additional claims for relief under "Civil RICO" Federal Racketeering laws (18 U.S.C. §1964). The lender may have established a "pattern of racketeering activity" by using the U.S. Mail more than twice to collect an unlawful debt and the lender may be in violation of 18 U.S.C. §§§§1341, 1343, 1961 and 1962.

The borrower has other claims for relief if he can prove there was or is a conspiracy to deprive him of property without due process of law under. (42 U.S.C.§§§1983 (Constitutional Injury), 1985(Conspiracy) and 1986 ("Knowledge" and "Neglect to Prevent" a U.S. Constitutional Wrong), Under 18 U.S.C.A.§ 241 (Conspiracy) violators, "shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both." In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate." The Court found no reason to impose a requirement that the Plaintiff's show that the Defendant had been convicted of collecting an unlawful debt, running a "loan sharking" operation. The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action. Durante Bros. & Sons, Inc. v. Flushing Nat 'l Bank. 755 F2d 239, Cert. denied, 473 US 906 (1985).

The Supreme Court found that the Plaintiff in a civil RICO action, need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff(s) by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must

show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to affect the congressional purpose as broadly formulated in the Statute, Sedima, SPRL v. Imrex Co.,473 US 479(1985).

Aside from any legal obligation, there exists a societal and moral obligation ensure to both the Plaintiff and the Defendant in that if you were to defuse a Bomb, and you completed the task 99% correct, you are still dead. Plaintiff's believes that his position on the law is sound, but fears grievous repercussions throughout the financial community if she should prevail. The credit for money scheme is endemic throughout our society and could have devastating effects on the national economy.

## COUNT X.
## VIOLATION OF TITLE 18, SECTION, 241
(Conspiracy Against Rights)

Plaintiff's asserts that all Defendants are guilty of this violation, through fraud, and deception, caused irreparable harm to the Plaintiff by its unlawful actions. The law is clear and states as follows:

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured. They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## COUNT XI
## VIOLATION OF TITLE 18, SECTION, 242
(Deprivation of rights under the color of law)

Plaintiff's asserts that all Defendants are guilty of this violation, through fraud, and deception, caused irreparable harm to the Plaintiff by its unlawful actions. The law is clear and states as follows:

Whoever, under the color of any law, statute, ordinance, regulation, or custom, wilfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## COUNT XII.
## VIOLATION OF CAL.CIVIL CODE§2943

Defendant's BAC and Recontrust Company are both guilty of violating Cal. Civil Code 2943. A request for a Beneficial Statement was served upon BAC and Recontrust Company, neither complied with the lawful request. California Civil Code 2943 states in full as follows;

(a) As used in this section:

(1) "Beneficiary" means a mortgagee or beneficiary of a mortgage or deed of trust, or his or her assignees.

(2) "Beneficiary statement" means a written statement showing:

(A) The amount of the unpaid balance of the obligation secured by the mortgage or deed of trust and the interest rate, together with the total amounts, if any, of all overdue installments of either principal or interest, or both.

(B) The amounts of periodic payments, if any.

(C) The date on which the obligation is due in whole or in part.

(D) The date to which real estate taxes and special assessments have been paid to the extent the information is known to the beneficiary.

(E) The amount of hazard insurance in effect and the term and premium of that insurance to the extent the information is known to the beneficiary.

(F) The amount in an account, if any, maintained for the accumulation of funds with which to pay taxes and insurance premiums.

(G) The nature and, if known, the amount of any additional charges, costs, or expenses paid or incurred by the beneficiary which have become a lien on the real property involved.

(H) Whether the obligation secured by the mortgage or deed of trust can or may be transferred to a new borrower.

(3) "Delivery" means depositing or causing to be deposited in the United States mail an envelope with postage prepaid, containing a copy of the document to be delivered, addressed to the person whose name and address is set forth in the demand therefor. The document may also be transmitted by facsimile machine to the person whose name and address is set forth in the demand therefore.

(4) "Entitled person" means the trustor or mortgagor of, or his or her successor in interest in, the mortgaged or trust property or any part thereof, any beneficiary under a deed of trust, any person having a subordinate lien or encumbrance of record thereon, the escrow holder licensed as an agent pursuant to Division 6 (commencing with Section 17000) of the Financial Code, or the party exempt by virtue of Section 17006 of the Financial Code who is acting as the escrow holder.

(5) "Payoff demand statement" means a written statement, prepared in response to a written demand made by an entitled person or authorized agent, setting forth the amounts required as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of the payoff demand statement. The written statement shall include information

1    reasonably necessary to calculate the payoff amount on a per diem basis for the period of time,

2    not to exceed 30 days, during which the per diem amount is not changed by the terms of the note.

3    (b) (1) A beneficiary, or his or her authorized agent, shall, within 21 days of the receipt of a

4    written demand by an entitled person or his or her authorized agent, prepare and deliver to the

5    person demanding it a true, correct, and complete copy of the note or other evidence of

indebtedness with any modification thereto, and a beneficiary statement.

6    (2) A request pursuant to this subdivision may be made by an entitled person or his or her

7    authorized agent at any time before, or within two months after, the recording of a notice of

8    default under a mortgage or deed of trust, or may otherwise be made more than 30 days prior to

9    the entry of the decree of foreclosure.

10   (c) A beneficiary, or his or her authorized agent, shall, on the written demand of an entitled

11   person, or his or her authorized agent, prepare and deliver a payoff demand statement to the

12   person demanding it within 21 days of the receipt of the demand. However, if the loan is subject

13   to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the

14   beneficiary shall have no obligation to prepare and deliver this statement as prescribed unless the

15   written demand is received prior to the first publication of a notice of sale or the notice of the

first date of sale established by a court.

16   (d) (1) A beneficiary statement or payoff demand statement may be relied upon by the entitled

17   person or his or her authorized agent in accordance with its terms, including with respect to the

18   payoff demand statement reliance for the purpose of establishing the amount necessary to pay the

19   obligation in full. If the beneficiary notifies the entitled person or his or her authorized agent of

20   any amendment to the statement, then the amended statement may be relied upon by the entitled

21   person or his or her authorized agent as provided in this subdivision.

22   (2) If notification of any amendment to the statement is not given in writing, then a written

23   amendment to the statement shall be delivered to the entitled person or his or her authorized

agent no later than the next business day after notification.

24   (3) Upon the dates specified in subparagraphs (A) and (B) any sums that were due and for any

25   reason not included in the statement or amended statement shall continue to be recoverable by

26   the beneficiary as an unsecured obligation of the obligor pursuant to the terms of the note and

27   existing provisions of law.

28

(A) If the transaction is voluntary, the entitled party or his or her authorized agent may rely upon the statement or amended statement upon the earlier of (i) the close of escrow, (ii) transfer of title, or (iii) recordation of a lien.

(B) If the loan is subject to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the entitled party or his or her authorized agent may rely upon the statement or amended statement upon the acceptance of the last and highest bid at a trustee's sale or a court supervised sale.

(e) The following provisions apply to a demand for either a beneficiary statement or a payoff demand statement:

(1) If an entitled person or his or her authorized agent requests a statement pursuant to this section and does not specify a beneficiary statement or a payoff demand statement the beneficiary shall treat the request as a request for a payoff demand statement.

(2) If the entitled person or the entitled person's authorized agent includes in the written demand a specific request for a copy of the deed of trust or mortgage, it shall be furnished with the written statement at no additional charge.

(3) The beneficiary may, before delivering a statement, require reasonable proof that the person making the demand is, in fact, an entitled person or an authorized agent of an entitled person, in which event the beneficiary shall not be subject to the penalties of this section until 21 days after receipt of the proof herein provided for. A statement in writing signed by the entitled person appointing an authorized agent when delivered personally to the beneficiary or delivered by registered return receipt mail shall constitute reasonable proof as to the identity of an agent. Similar delivery of a policy of title insurance, preliminary report issued by a title company, original or photographic copy of a grant deed or certified copy of letters testamentary, guardianship, or conservatorship shall constitute reasonable proof as to the identity of a successor in interest, provided the person demanding a statement is named as successor in interest in the document.

(4) If a beneficiary for a period of 21 days after receipt of the written demand willfully fails to prepare and deliver the statement, he or she is liable to the entitled person for all damages which he or she may sustain by reason of the refusal and, whether or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars ($300). Each failure to prepare and deliver the statement, occurring at a time when, pursuant to this section, the

beneficiary is required to prepare and deliver the statement, creates a separate cause of action, but a judgment awarding an entitled person a forfeiture, or damages and forfeiture, or any failure to prepare and deliver a statement bars recovery of damages and forfeiture for any other failure to prepare and deliver a statement, with respect to the same obligation, in compliance with a demand therefore made within six months before or after the demand as to which the award was made. For the purposes of this subdivision, "willfully" means an intentional failure to comply with the requirements of this section without just cause or excuse.

(5) If the beneficiary has more than one branch, office, or other place of business, then the demand shall be made to the branch or office address set forth in the payment billing notice or payment book, and the statement, unless it specifies otherwise, shall be deemed to apply only to the unpaid balance of the single obligation named in the request and secured by the mortgage or deed of trust which is payable at the branch or office whose address appears on the aforesaid billing notice or payment book.

(6) The beneficiary may make a charge not to exceed thirty dollars ($30) for furnishing each required statement. The provisions of this paragraph shall not apply to mortgages or deeds of trust insured by the Federal Housing Administrator or guaranteed by the Administrator of Veterans Affairs.

(f) The preparation and delivery of a beneficiary statement or a payoff demand statement pursuant to this section shall not change a date of sale established pursuant to Section 2924g.

(g) This section shall become operative on January 1, 2014.

Defendant's BAC and Recontrust are liable to the Plaintiff for actual damages in the amount of the loan which is $543,775.55.

## COUNT XIII.
## VIOLATION OF R.E.S.P.A

Plaintiffs reaffirm and reallege paragraphs above herein as if specifically set forth more fully herein below.

As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

In violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiffs, Defendants accepted charges for the rendering of real estate services which were in facts charges for other than services actually performed.

As a result of the Defendant's violations for RESPA, Defendants are liable to Plaintiff's in an amount equal to three (3) times the amount of charges paid by Plaintiff's for "settlement services" pursuant to 12 USC sec. 2607(d)(2).

119. Plaintiff served defendants, BAC and Recontrust Company, all of whom completely ignored Plaintiff's lawful remedy. This act in itself is Non Compliance with the federal law. The court should take notice that an investigation is ongoing with the RESPA **Office** of **RESPA** and Interstate Land Sales US Department of Housing and Urban Development.

*Fictitious Party*: A person appearing in the writ, complaint, or record as the plaintiff in a suit, but who in reality does not exist, or who is ignorant of the suit and the use of his name in it. It is a contempt of court to sue in the name of a fictitious party. Black's Law Dictionary, 6th Ed. (13th reprint,1998), p.624.

**WHEREFORE,** Plaintiff having set forth the claims for relief against Defendants, respectfully pray that this Court grant the following relief against the Defendants:

1. For exemplary and punitive damages;
2. Actual Economic and Non-Economic Damages;
3. Costs and reasonable attorney's fees pursuant to *California Civil Code* §1717, §1788.30(b), §1788.30(c);
4. In order for a declaration of the rights of the parties relative to Plaintiff's Home, including a declaration that Defendants have no enforceable lien against Plaintiff's Home;
5. For a preliminary injunction and permanent injunction enjoining all Defendants, their agents, assigns, and all persons acting under, for, or in concert

with them, from taking possession on Plaintiff property and home from any Unlawful Detainer.

    6. Cancellation of the sale and restitution of the home to the Plaintiff; and

    7. For damages as provided by statute;

    8. For an Order enjoining Defendants from continuing to violate the statutes alleged herein;

For an Order, requiring Defendant to reinstate Plaintiff's on title to his Property, and or a restraining order preventing Defendants and his, hers, or its agents, employees, officers, attorneys, and representatives from engaging in or performing any of the following acts: (i) offering, or advertising this property for sale and (ii) attempting to transfer title to this property and or (iii) holding any auction therefore;

10. For such other and further relief as the court may deem just and proper.

11. For a full re-conveyance of the property to the Plaintiff's as it is the owner in due course.

Dated: September 8, 2010

By: Goharik Saakian

Norair and Goharik Saakian, Plaintiff's

1
2
3
4 ////////////////////////////
5 ////////////////////////////
6 ////////////////////////////
7 ////////////////////////////
8 ////////////////////////////
9
10
11
12
13
14
15
16
17
18
19          THIS PAGE INTENTIONALLY LEFT BLANK
20
21
22
23 ////////////////////////////
24 ////////////////////////////
25 ////////////////////////////
26 ////////////////////////////
27 ////////////////////////////
28 ////////////////////////////

1  ///////////////////////////

2

3

4

5

6

7

8

9

10

11

12

13                          EXHIBIT A

14  NOTICE OF DEFAULT AND SUBSTITUTION OF TRUSTEE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FEB-17-2010(WED) 13:58    Planet Investment Group      (FAX)818 845 6625       P. 001/004

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Attn:
TS No. 09-0088817

Title Order No. 09-8-253570

---

APN No.:2330-017-006

## NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 12/13/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by NORAIR SAAKIAN AND GOHARIK SAAKIAN, HUSBAND AND WIFE AS JOINT TENANTS, dated 12/13/2006 and recorded 01/09/2007, as Instrument No. 20070039269, in Book , Page , ), of Official Records in the office of the County Recorder of LOS ANGELES County, State of California, will sell on 10/21/2009 at 10:30 AM, At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 13606 DELANO STREET, LOS ANGELES ( VAN NUYS AREA ), CA 91401. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $543,775.06. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: /S/ Title Officer

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

*Form mlgnos (07/01)*

RECORDING REQUESTED BY:

RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

THIS DOCUMENT IS BEING SENT TO YOU IN
ACCORDANCE WITH CIVIL CODE SECTION 2934.
THE ORIGINAL OF THIS DOCUMENT HAS
CONCURRENTLY BEEN SENT FOR RECORDING
WITH THE COUNTY RECORDER

ATTN:
TS No. 09-0088817

TSG No. 09-8-253570

_SPACE ABOVE THIS LINE FOR RECORDER'S USE_

## SUBSTITUTION OF TRUSTEE

WHEREAS, NORAIR SAAKIAN AND GOHARIK SAAKIAN, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, TICOR TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 12/13/2006 recorded on 01/09/2007 as Instrument No. 20070039269 in Book  Page  of Official Records of  Los Angeles County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

State of:   California            )

County of: _____   )   BY: /S/ Beneficiary or Investor

On _____ before me, _____, notary public, personally
appeared _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

*Form.mlngsub (01/09)*

FEB-17-2010(WED) 13:59    Planet Investment Group       (FAX)818 845 6625        P. 003/004

RECORDING REQUESTED BY:  RECONTRUST COMPANY

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

THIS DOCUMENT IS BEING SENT TO YOU
IN ACCORDANCE WITH CIVIL CODE
SECTION 2934a.

Attn:
TS No. 09-0088817

Title Order No. 09-8-253570

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## AFFIDAVIT OF MAILING
## FOR SUBSTITUTION OF TRUSTEE BY CODE

TS#:    09-0088817

Trustor: NORAIR SAAKIAN AND GOHARIK SAAKIAN, HUSBAND AND WIFE AS JOINT
TENANTS

I, MANJIT GHATAURA          , TRUSTEE SALE OFFICER, declare: That I am an officer, agent or
employee of RECONTRUST COMPANY, N.A., whose business address is  1800 Tapo Canyon Rd.,
CA6-914-01-94, SIMI VALLEY, CA 93063.

I am over the age of eighteen years; On 10/01/2009, by Certified and First Class mail, enclosed in
sealed envelopes with postage fully prepaid, I caused to be deposited in the United States Mail copies of
the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said
Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner
provided in Section 2924b of the Civil Code of the State of California to all persons to whom a copy of
the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

Date: 10/1/2009

/S/   MANJIT GHATAURA

*Form affdvtsub (08/03)*

1
2
3
4
5
6
7
8
9
10
11
12

# EXHIBIT B

STATE OF CALIFORNIA VS COUNTRYWIDE HOME

LOANS STIPULATED JUDGEMENT AND INJUNCTION

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORIGINAL FILED
Los Angeles Superior Court

OCT 14 2008

John A. Clarke, Clerk
By Sahak Guladzhyan, Deputy

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

NORTHWEST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | Case No. LC083076 |
| Plaintiff, | |
| v. | STIPULATED JUDGMENT AND INJUNCTION |
| COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; COUNTRYWIDE HOME LOANS, INC., a New York corporation; and FULL SPECTRUM LENDING, INC., a California corporation, | |
| Defendants. | |

RECEIVED
LASC - Northwest East
OCT 14 2008

It appearing to this Court that Plaintiff, the People of the State of California, by and through Edmund G. Brown Jr., Attorney General, and Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc., and Full Spectrum Lending, Inc. have resolved the matters in controversy between them and have consented to the terms of this judgment without the taking of evidence, and good cause having been shown, the Court hereby enters this

1

STIPULATED JUDGMENT AND INJUNCTION

1  Stipulated Judgment and Injunction.

2      IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

3      1.    This Court has jurisdiction of the subject matter hereof and the parties hereto.

4      2.    Venue is proper in this Court.

5      3.    For purposes of this Stipulated Judgment and Injunction:

6      A.    *"Affiliate"* means, with respect to any company, any company that

7  controls, is under common control with, or is controlled by such company.

8      B.    *"Affordability Equation"* has the meaning given to such term in Section

9  6.3.4.

10      C.    *"Alt-A Residential Mortgage Loans"* means CFC Residential Mortgage

11  Loans that are (a) not owned by a GSE; (b) not Subprime; (c) not a Pay Option ARM; (d)

12  less than $400,000 in original principal amount, and (e) including documentation or other

13  characteristics that make such loans not Federal Eligible.

14      D.    *"Annual Increase"* means, with respect to any stated rate of interest, an

15  annual increase in the stated rate of interest such that the aggregate scheduled payments of

16  principal (if applicable) and interest in any year does not increase by more than 7.5% of

17  the aggregate scheduled payments of principal and interest in the preceding year, subject

18  to any stated interest rate cap.

19      E.    *"ARMs"* means adjustable rate first-lien residential mortgage loans.

20      F.    *"BAC"* means Bank of America Corporation.

21      G.    *"Borrower"* means, with respect to any owner-occupied CFC Residential

22  Mortgage Loan, the obligors(s) on such loan.  No covenant or commitment herein is

23  intended to require a CFC Servicer to deal with more than one obligor on behalf of any

24  Borrower with respect thereto.

25      H.    *"CFC"* means Countrywide Financial Corporation.

26      I.    *"CFC-Originated"* means, with respect to any residential mortgage loan,

27  that such residential mortgage loan is a first-lien residential mortgage that was originated

28  on a retail basis directly or indirectly by CFC or its subsidiaries or through brokers in their

1   wholesale lending channels. **"CFC-Originated"** residential mortgage loans do not

2   include CFC Purchased Loans.

3           J.      **"CFC Purchased Loans"** means any first-lien residential mortgage loan

4   originated by unaffiliated third parties and directly or indirectly purchased by CFC or its

5   subsidiaries through their correspondent lending channels or otherwise, *provided* that such

6   loan is serviced by a CFC Servicer. **"CFC Purchased Loans"** do not include CFC-

7   Originated residential mortgage loans.

8           K.      **"CFC Residential Mortgage Loans"** means any (a) CFC-Originated first-

9   lien residential mortgage loans, or (b) CFC Purchased Loans, so long as, in each case,

10   such loans are serviced by a CFC Servicer.

11           L.      **"CFC Servicer"** means CFC or any Affiliate of CFC that services CFC

12   Residential Mortgage Loans.

13           M.      **"CLTV"** means, with respect to a first-lien residential mortgage loan as of

14   the time underwritten, the ratio of the sum of the unpaid principal balance of such

15   mortgage loan *plus* the unpaid principal balance on any second-lien mortgage to the

16   Market Value of the residential property that secures such mortgages.

17           N.      **"Commencement Date"** means October 6, 2008.

18           O.      **"Countrywide Defendants"** means Countrywide Financial Corporation,

19   Countrywide Home Loans, Inc., and Full Spectrum Lending, Inc.

20           P.      **"Delinquent Borrower"** means, with respect to any Borrower, that the

21   related CFC Residential Mortgage Loan (a) is Seriously Delinquent on or before the

22   Termination Date, or (b) is subject to an imminent reset or Recast and, in the reasonable

23   view of the CFC Servicer, as a result of such reset or Recast is reasonably likely to

24   become Seriously Delinquent on or before the Termination Date.

25           Q.      **"Eligible Borrower"** has the meaning given to such term in Section 6.3.1.

26           R.      **"Fannie Mae"** means Federal National Mortgage Association.

27

28

3

1           S.       **"Fannie Rate"** means, as of any date, the Fannie Mae 30-year fixed rate

2    60-day delivery required net yield as of such date or if such rate is for any reason not

3    available, a comparable rate published by another nationally recognized source.

4           T.       **"Federal Eligible"** means, with respect to any first-lien residential

5    mortgage loan that, at the time of origination, (a) such loan is or was eligible for sale to, or

6    guaranty or insurance by, a federal agency, GSE or comparable federally-sponsored entity

7    similar to a GSE, under then applicable guidelines of such agency, GSE or entity, or (b)

8    such loan was made in connection with a program intended to qualify for credit under the

9    Community Reinvestment Act of 1977.

10          U.       **"Foreclosure Avoidance Budget"** has the meaning given to such term in

11    Section 6.3.4(a).

12          V.       **"Foreclosure Relief Program"** means the program under which certain

13    Borrowers will be offered payments, as set forth in Section 6.5.

14          W.      **"Freddie Mac"** means Federal Home Loan Mortgage Corporation.

15          X.       **"GSE"** means a government-sponsored enterprise such as Fannie Mae or

16    Freddie Mac.

17          Y.       **"Interest Rate Floor"** means, with respect to modification of a Qualifying

18    Mortgage hereunder, (a) a rate of 3.5% per annum if the modification results in an

19    interest-only payment, or (b) a rate of 2.5% per annum if the modification results in a fully

20    amortizing payment.

21          Z.       **"LTV"** means, with respect to a first-lien residential mortgage loan as of

22    the time reviewed for eligibility for modification, the ratio of the unpaid principal balance

23    of such mortgage loan to the Market Value of the residential property that secures such

24    mortgage.

25          AA.    **"Market Value"** means, with respect to any residential mortgage loan, the

26    value of the residential property that secures such mortgage loan as determined by a

27    lender or servicer in reliance on an appraisal (whether based on a appraisal report prepared

28    not more than 180 days before the date of determination, broker price opinion prepared

not more than 120 days before the date of determination or automated valuation model prepared not more than 90 days before the date of determination).

BB.    *"Pay Option ARMs"* means ARMs that, during an initial period (and subject to Recast), permit the borrower to choose among two or more payment options, including an interest-only payment and a minimum (or limited) payment.

CC.    *"Qualifying Mortgage"* has the meaning given to such term in Section 6.3.2.

DD.    *"Recast"* means, in the case of a Pay Option ARM, a contractual payment recast based on a negative amortization trigger.

EE.    *"Relocation Assistance payment"* has the meaning given to such term in Section 6.4.1.

FF.    *"Seriously Delinquent"* means, with respect to any residential mortgage loan, that payments of interest or principal are 60 or more days delinquent.

GG.    *"Seriously Delinquent Borrower"* means, with respect to any Borrower that, on or before the Termination Date, the related CFC Residential Mortgage Loan is Seriously Delinquent.

HH.    *"Subprime 2, 3, 5, 7 and 10 Hybrid ARMs"* means Subprime Mortgage Loans that are 2, 3, 5, 7 and 10 Hybrid ARMs.

II.    *"Subprime Mortgage Loans"* means first-lien residential mortgage loans that (a) combine higher risk features (such as low or no documentation, low equity, adjustable interest rates, prepayment penalties, cash-out financing) with higher risk borrower profiles (lower FICO scores, recent bankruptcies/foreclosures, major derogatory credit), resulting in a loan that could not reasonably be underwritten and approved as a "prime" loan. An existing CFC Residential Mortgage Loan would be a *"Subprime Mortgage Loan"* if it is identified as such in connection with a securitization in which it is part of the pool of securitized assets or, in the case of a CFC Residential Mortgage Loan that is not included in a securitization, was classified as being "subprime" on the systems

5

STIPULATED JUDGMENT AND INJUNCTION

1    of CFC and its subsidiaries on June 30, 2008. "*Subprime Mortgage Loans*" do not

2    include first-lien residential mortgage loans that are Federal Eligible.

3         JJ.   "*Termination Date*" means June 30, 2012.

4         4.    On July 1, 2008, Bank of America Corporation announced that it had completed its

5    purchase of Countrywide Financial Corporation, including Countrywide Home Loans. In

6    connection with the acquisition, Bank of America announced that the Countrywide Defendants

7    would suspend offering Subprime, higher-cost or nontraditional mortgages that may result in

8    negative amortization, including Pay Option ARMs. In addition, Bank of America also stated

9    that it would place restrictions on offering "low documentation" and "no documentation"

10   mortgage loans and set limits on mortgage broker compensation.

11        5.    All relief under Paragraphs 6 through 12 of this Judgment is ordered pursuant to

12   the Court's powers, including the Court's powers under sections 17203 and 17535 of the

13   California Business and Professions Code.

14        6.    *Agreements of the Parties.*

15        6.1   *CFC SOLE OBLIGOR ON ALL OBLIGATIONS IN THIS SECTION 6 OF*

16             *THIS STIPULATED JUDGMENT AND INJUNCTION.*

17             6.1.1  *Responsibility of CFC.*  Until the Termination Date (or such earlier date as

18        is specified herein), CFC is responsible to the other parties hereto for performance of all

19        of the undertakings in Section 6 of this Stipulated Judgment and Injunction, including the

20        changes to the residential mortgage lending practices described in Section 6.2, the loan

21        modification programs described in Section 6.3, the Relocation Assistance payments

22        described in Section 6.4, the Foreclosure Relief Program described in Section 6.5 and the

23        reporting obligations described in Section 6.6.

24             6.1.2  *Absence of Defenses.*  It is not a condition to the performance of the

25        obligations of CFC hereunder that it does not directly or indirectly engage in the business

26        of originating residential mortgage loans or in the business of servicing residential

27        mortgage loans. CFC is responsible for the conduct of CFC Affiliates and CFC Servicers

28        as specified hereunder whether or not it controls such CFC Affiliates or CFC Servicers

6

1   and the absence of such control shall not be a defense to or otherwise excuse CFC's

2   failure to perform hereunder.

3       6.1.3   *Remedies for Failure of CFC to Cause Performance.*   If there is a

4   material failure to perform the obligations under the loan modification programs described

5   in Section 6.3, the Relocation Assistance payments described in Section 6.4, the

6   Foreclosure Relief Program described in Section 6.5 or the reporting obligations described

7   in Section 6.6 and such failure is not promptly cured after notice by the Office of the

8   Attorney General of the State of California, then the Office of the Attorney General may

9   terminate Section 6 of this Stipulated Judgment and Injunction and is no longer bound by

10   the release set forth in Section 10 of this Stipulated Judgment and Injunction.

11   6.2   *SERVICER PRACTICES.*

12       Until the Termination Date, CFC shall be responsible for the implementation of the

13   following by CFC Affiliates with respect to CFC Residential Mortgage Loans with respect to

14   Borrowers in the State of California:

15       6.2.1   *Enhanced Home Retention Practices.*

16       (a)   CFC Servicers will maintain robust processes for early

17   identification and contact with Borrowers who are having, or may have, trouble

18   making their payments on CFC Residential Mortgage Loans.   Under these

19   processes, when contact is made with Delinquent Borrowers, an individualized

20   evaluation of the Borrowers' economic circumstances will be made to determine if

21   alternatives to foreclosure are available, and consistent with the directions of the

22   investors, if applicable.

23       (b)   CFC Servicers will maintain the current practice of offering

24   Delinquent Borrowers who desire to remain in their homes and who can afford to

25   make reasonable mortgage payments loan modifications or other workout

26   solutions, subject to applicable investor guidance and approvals.

27

28

(c)  CFC's reports to the State under this agreement will include information on the numbers and types of workouts concluded on loans secured by owner-occupied properties in the State of California.

(d)  CFC Servicers will continue the current practice of regularly monitoring the delinquency characteristics of the entire portfolio of CFC Residential Mortgage Loans, including Alt-A Residential Mortgage Loans, loans with interest-only features, and other loans to prime borrowers, to identify high-delinquency segments that may be appropriate for loan modification campaigns. CFC shall be responsible for providing reports to the Office of the Attorney General of the State of California on the delinquency characteristics of such loans, as provided herein.

(e)  With respect to Alt-A Residential Mortgage Loans, CFC acknowledges that Office of the Attorney General of the State of California has expressed concerns about future delinquencies, and agrees to provide the Office of the Attorney General a notification whenever the nationwide rate at which Borrowers on Alt-A Residential Mortgage Loans are 30 days or more delinquent in their payments exceeds 150% of the delinquency rate for comparably-aged FHA-insured loans serviced by CFC Servicers. If such notice is required, CFC agrees to confer with the Office of the Attorney General concerning Alt-A Residential Mortgage Loans delinquency trends, including whether delinquencies are isolated in certain segments of the Alt-A Residential Mortgage Loans portfolio (*e.g.*, loans with interest-only features, loans originated at high CLTV), and concerning the possible deployment of streamlined foreclosure avoidance solutions for such Borrowers.

(f)  Through July 1, 2009, a minimum of 3900 personnel shall be employed to assist Borrowers with loan modifications and other foreclosure avoidance measures.

6.2.2   *Compliance.*   Understanding the circumstances and behaviors of lenders and brokers that may have contributed, in part, to the current mortgage crises, CFC recognizes its responsibility to ensure the very highest degree of ethical conduct on the part of CFC's agents and employees.   CFC shall ensure that (a) to the extent it resumes subprime lending, it will design and implement an effective compliance management program to provide reasonable assurance as to the identification and control of consumer protection hazards associated with such subprime lending activities, and (b) to the extent of its own lending activities (if any), it will create appropriate consumer safeguards to avoid unfair or deceptive activities or practices arising in connection with its interaction with brokers and other third parties.

6.3   *LOAN MODIFICATIONS FOR SERIOUSLY DELINQUENT BORROWERS IN CERTAIN MORTGAGE PRODUCTS.*

Until the Termination Date, CFC shall be responsible for ensuring that CFC Servicers do the following:

6.3.1   *Eligible Borrowers.*   An *"Eligible Borrower"* is a Borrower who has a Qualifying Mortgage with a first payment date on or before December 31, 2007, that (a) is secured by an owner-occupied 1-4 unit residential property, (b) is serviced by a CFC Servicer, and (c) in the event that it is determined that a condition described in Section 6.3.10 has occurred, the applicable CFC Servicer has determined that such Borrower is in financial distress.   Eligible Borrowers are potentially eligible for loan modification relief under this Section 6.3.   A Borrower who does not occupy the 1-4 unit residential property that secures the Qualifying Mortgage is not an *"Eligible Borrower."*

6.3.2   *Qualifying Mortgages.*   The following CFC Residential Mortgage Loans are *"Qualifying Mortgages"* if the Borrower is an Eligible Borrower and the Borrower meets one of the specified delinquency profiles:

(a)   *Subprime 2, 3, 5, 7 and 10 Hybrid ARMs.*   A Subprime 2, 3, 5, 7 and 10 Hybrid ARM shall be a Qualifying Mortgage if the Eligible Borrower

9

meets any one of the following delinquency profiles at the time considered for loan modification:

(1)    The Eligible Borrower is a Seriously Delinquent Borrower and the LTV is 75% or more; or

(2)    The Eligible Borrower is a Delinquent Borrower and the LTV is 75% or more.

(b)    *Pay Option ARMs.*  A Pay Option ARM shall be a Qualifying Mortgage if the Eligible Borrower meets any one of the following delinquency profiles at the time considered for loan modification:

(1)    The Eligible Borrower is Seriously Delinquent and the LTV is 75% or more; or

(2)    The Eligible Borrower is a Delinquent Borrower and the LTV is 75% or more.

(c)    *Subprime First Mortgage Loans (Other than Hybrid 2, 3, 5, 7 and 10 ARMs).*  A Subprime CFC Residential Mortgage Loan shall be a Qualifying Mortgage if the Eligible Borrower is a Seriously Delinquent Borrower and the LTV is 75% or more.

6.3.3    *Loan Modifications to Be Considered.*  Each Eligible Borrower shall be considered for a range of affordable loan modification options with respect to his or her Qualifying Mortgage.  The loan modification options will include those described below and existing modification options currently undertaken by CFC, and are subject, as applicable, to approval of the investor who owns the Qualifying Mortgage consistent with the Affordability Equation, as set forth in Section 6.3.4.  Loan modification options for each category of Qualifying Mortgages are as follows:

(a)    *Subprime Hybrid 2, 3, 5, 7 and 10 ARMs.*  Qualifying Mortgages that are Subprime Hybrid 2, 3, 5, 7 and 10 ARMs will be eligible for loan modifications as follows:

STIPULATED JUDGMENT AND INJUNCTION

*(1)*   To the extent the HOPE for Homeowners Program is available, an FHA refinancing under the HOPE for Homeowners Program under the underwriting criteria applicable to that program.

*(2)*   For Eligible Borrowers who are Delinquent Borrowers, an unsolicited (subject to Section 6.3.10) restoration of the introductory rate for five years, without new loan documentation or an evaluation of the Eligible Borrower's current income.   Communications to Eligible Borrowers informing them of this modification will invite Eligible Borrowers to contact the applicable CFC Servicer if they do not believe they will be able to afford the introductory rate in order to be considered for more extensive relief under Section 6.3.3(a)(3).

*(3)*   A streamlined, fully-amortizing loan modification subject to the Affordability Equation consisting of:

(a)   until the fifth anniversary of the loan modification, a reduction of the interest rate to the (1) introductory rate or (2) lower (but not less than 3.5%); and

(b)   on the fifth anniversary of the loan modification, an automatic conversion to a fixed rate mortgage for the remainder of the loan term at the higher of (1) the Fannie Rate and (2) the introductory rate.   If the Fannie Rate option applies and would not be affordable to the Eligible Borrower based on his or her income at the time of conversion, the Eligible Borrower will be considered for a single two year period of reduced-rate financing (in which case the conversion to a fixed rate mortgage will occur at the end of the seventh year).

*(4)*   A streamlined loan modification subject to the Affordability Equation consisting of:

11

(a)   modification of the Qualifying Mortgage to include a ten-year interest-only period;

(b)   reduction of the interest rate to a rate no lower than the Interest Rate Floor, with an Annual Increase subject to an interest-rate cap as provided below in Section 6.3.3(a)(4)(c); and

(c)   an interest-rate cap for the remaining, fully-amortizing term of the Qualifying Mortgage at an annual interest rate equal to the introductory rate.

(b)   *Pay Option ARMs*:   Qualifying Mortgages that are Pay Option ARMs are eligible for the following loan modifications:

(1)   To the extent the HOPE for Homeowners Program is available, an FHA refinancing under the HOPE for Homeowners Program under the underwriting criteria applicable to that program; or

(2)   A streamlined loan modification subject to the Affordability Equation consisting of:

(a)   elimination of the negative amortization feature;

(b)   optional introduction of a ten-year interest-only period on the loan;

(c)   reduction of the interest rate to a rate no lower than the Interest Rate Floor, with an Annual Increase subject to an interest rate cap of 7%; and

(d)   if the Eligible Borrower owns only one residential property and the LTV is 95% or higher, a write down of the principal balance of the Qualifying Mortgage (but any write down of principal would not be in an amount greater than necessary to achieve an LTV of 95%).

(c)    *Subprime Loans (Other than Hybrid 2, 3, 5, 7 and 10 ARMs).* Qualifying Mortgages that are Subprime Loans (Other than Hybrid 2, 3, 5, 7 and 10 ARMs) are eligible for the following loan modifications:

(1)    To the extent the HOPE for Homeowners Program is available, an FHA refinancing under the HOPE for Homeowners Program under the underwriting criteria applicable to that program; or

(2)    A streamlined loan modification within the limits of the Affordability Equation consisting of:

(a)    optional introduction of a ten-year interest-only period on the loan;

(b)    reduction of the interest rate on the mortgage to a rate no lower than the Interest Rate Floor, with an Annual Increase subject to an interest rate cap as provided below in Section 6.3.3(c)(2)(c); and

(c)    an interest-rate cap for the remaining term of the Qualifying Mortgage at an annual interest rate equal to (i) the fixed interest rate *less* 200 basis points, in the case of fixed-rate loans, and (ii) the remainder of the sum of the contractual index amount *plus* spread immediately before the first loan modification, *minus* 200 basis points, in the case of an ARM.

6.3.4    *Affordability Equation.* Qualifying Mortgages will be considered for loan modifications in accordance with the following Affordability Equation, which establishes a Foreclosure Avoidance Budget that is a cap on the cost of the loan modification.

(a)    *Foreclosure Avoidance Budget.* Except for Eligible Borrowers who receive a streamlined reduction of their interest rates pursuant to Section 6.3.3(a)(2), a Foreclosure Avoidance Budget will be prepared with respect to the Eligible Borrower and the Qualifying Mortgage. The *"Foreclosure Avoidance Budget"* at any time is the difference between (i) the likelihood and severity of the

13

projected loss in a foreclosure sale and (ii) the likelihood and severity of the projected loss in the event that there was a loan modification with respect to the Qualifying Mortgage and a later foreclosure sale. For purposes of determining the Foreclosure Avoidance Budget for a Qualifying Mortgage, the LTV will be based on the Market Value.

(b)    *Affordability Criteria.*

(1)    Subject to the Foreclosure Avoidance Budget, if tax and insurance escrows are maintained with respect to the Qualifying Mortgage, the Eligible Borrower will be offered a loan modification that produces a first-year payment of principal (if applicable), interest, taxes and insurance equating to 34% of the Eligible Borrower's income, or as close to 34% of the Eligible Borrower's income as the Foreclosure Avoidance Budget permits without exceeding 42% of the Eligible Borrower's income.

(2)    Subject to the Foreclosure Avoidance Budget, if tax and insurance escrows are not maintained with respect to a Qualifying Mortgage, the Eligible Borrower will be offered a loan modification that produces a first-year payment of principal (if applicable) and interest equating to 25% of the Eligible Borrower's income, or as close to 25% of the Eligible Borrower's income as the Foreclosure Avoidance Budget permits without exceeding 34% of the Eligible Borrower's income.

(c)    *Borrowers Who Cannot Afford a Loan Modification.* There is no obligation to offer loan modifications with respect to Qualifying Mortgages if the Eligible Borrower cannot be qualified under the Affordability Equation. Such Eligible Borrowers may be eligible for a Relocation Assistance payment or a payment under the Foreclosure Relief Program, all as provided in Sections 6.4 and 6.5.

6.3.5  *Outreach to Borrowers at Risk of Delinquency.* Borrowers under Subprime Mortgage Loans or Pay Option ARMs with first-payment due dates between

14

January 1, 2004 and December 31, 2007, whose payments are scheduled to change as a result of an interest-rate reset, Recast, or expiration of an interest-only term, will be sent a communication approximately ninety (90) days before the payment change inviting them to contact their CFC Servicer if they believe they will not be able to afford their new payments. In the event that a borrower responds to this communication, the borrower will be considered for loan modifications under the eligibility criteria in Section 6 of this Stipulated Judgment and Injunction.

6.3.6   *Restrictions on Initiation or Advancement of Foreclosure Process for Eligible Borrowers.*

(a)   The foreclosure process for a Qualifying Mortgage of an Eligible Borrower will not be initiated or advanced for the period necessary to determine such Eligible Borrower's interest in retaining ownership and ability to afford the revised mortgage terms, as well as the investor's willingness to accept a loan modification.

(b)   Any such foreclosure process will be initiated or advanced only if:

(1)   it is determined, based on communication with the Borrower or based on the Borrower's abandonment of the residential property that secures the mortgage loan, that the Borrower does not wish to retain ownership of the residence that secured the mortgage loan;

(2)   it is or has been determined that the Borrower cannot be qualified for, or has refused, a loan modification under Section 6 of this Stipulated Judgment and Injunction within the limits of the Affordability Equation, as applicable; or

(3)   despite reasonable efforts, servicing agents have been unable to make contact with the borrower to determine his or her preferences with regard to home ownership, or to obtain information concerning his or her income and ability to afford a mortgage payment under a modification.

15

STIPULATED JUDGMENT AND INJUNCTION

6.3.7  *Miscellaneous Provisions Related to Loan Modification Program.*

(a)  ***Commitment to Waive Late/Delinquency Fees.***  Any late/delinquency fees associated with overdue loan payments remaining unpaid as of the date immediately before modification of the Qualifying Mortgage under Section 6 of this Stipulated Judgment and Injunction will be waived.

(b)  ***Commitment Not to Charge Loan Modification Fees.***  Except to the extent required in connection with the HOPE for Homeowners Program, Eligible Borrowers will not be charged loan modification fees in connection with loan modifications of Qualifying Mortgages hereunder.

(c)  ***Prepayment Penalty Waivers.***  Prepayment penalties will be waived in connection with any payoff or refinancing (even if refinanced by a person not Affiliated with CFC) of a Qualifying Mortgage that is a Subprime Mortgage Loan or Pay Option ARM that (i) had a first payment due date between January 1, 2004 and December 31, 2007, (ii) was directly or indirectly held by CFC on June 30, 2008, and (iii) which at the time of the payoff or refinancing is held by CFC or any Affiliate.  Investor owners or their representatives of Qualifying Mortgages that are Subprime Mortgage Loans or Pay Option ARMs serviced by a CFC Servicer will be encouraged to waive prepayment penalties in such circumstances.

(d)  ***Commitment to Consider Additional Relief for Borrowers Receiving Modifications and Later Becoming Delinquent.***  Eligible Borrowers with respect to Qualifying Mortgages who have earlier received loan modifications or other workouts, whether or not pursuant to Section 6 of this Stipulated Judgment and Injunction, will be eligible to be considered for new loan modification offers under Section 6 of this Stipulated Judgment and Injunction if they otherwise satisfy the eligibility criteria.

(e)  ***Representation Concerning Investor Delegation and Approval.***  CFC represents that CFC Servicers currently have, or reasonably expect to obtain,

16

STIPULATED JUDGMENT AND INJUNCTION

1    discretion to pursue the foreclosure avoidance measures outlined in Section 6 of

2    this Stipulated Judgment and Injunction for a substantial majority of Qualifying

3    Mortgages. If CFC Servicers do not have discretion to pursue these foreclosure

4    avoidance measures, best efforts will be used to obtain appropriate investor

5    authorization.

6        6.3.8  *Commitment to Implement Relief Measures Authorized by Federal*

7    *Government.*

8            (a)    *Government Acquisition of Qualifying Mortgages.*  To the extent

9    the federal government acquires any Qualifying Mortgages and, as the owner of

10    these mortgages, authorizes loan modifications that offer borrower benefits greater

11    than those associated with the modifications outlined in Section 6 of this

12    Stipulated Judgment and Injunction, relief measures will be pursued in modifying

13    such Qualifying Mortgages to the full extent of such authorization.

14            (b)    *Government-Issued Guidelines Relating to Loan Modifications.*

15    To the extent any federal agency, in connection with its intervention in the

16    secondary mortgage market or otherwise having jurisdiction, issues guidelines

17    relating to modifications of delinquent mortgages, Section 6 of this Stipulated

18    Judgment and Injunction will be implemented in a manner that, to the maximum

19    extent feasible, produces modifications consistent with such guidelines.

20        6.3.9  *Timeframe for Loan Modification Process.*  The loan modification

21    process will be managed to ensure that offers of loan modifications under Section 6 of this

22    Stipulated Judgment and Injunction (other than unsolicited interest rate reductions) are

23    made to Eligible Borrowers, on average, no more than 60 days after such Eligible

24    Borrowers make contact with the applicable CFC Servicer and provide any required

25    information concerning a possible modification.

26        6.3.10 *Response to Intentional Nonperformance by Borrowers.*  If CFC detects

27    material levels of intentional nonperformance by Eligible Borrowers that appears to be

28    attributable to the introduction of the loan modification program, it reserves the right to

17

require objective prequalification of Eligible Borrowers for loan modifications under the program by obtaining verification of all sources of income and the application of funds, and to take other reasonable steps. Such prequalification could result in the elimination of unsolicited interest rate reductions, inhibit streamlined solutions and could otherwise significantly slow implementation of the loan modification program.

6.3.11 *No Releases with Respect to Loan Modifications.* There will be no requirement that Eligible Borrowers release claims against CFC or any CFC Affiliate in connection with loan modifications offered under Section 6 of this Stipulated Judgment and Injunction.

6.3.12 *Number of Loan Modification Offers before March 31, 2009.* On or before March 31, 2009, loan modifications will be offered by CFC Servicers in accordance with Section 6 of this Stipulated Judgment and Injunction to not fewer than 50,000 Seriously Delinquent Borrowers on a nationwide basis. The Office of the Attorney General of the State of California may terminate Section 6 of this Stipulated Judgment and Injunction and no longer be bound by the release set forth in Section 10 of this Stipulated Judgment and Injunction if there is a material failure to satisfy this commitment. If the Office of the Attorney General terminates Section 6, any portion of the Foreclosure Relief Program allocation that has not been paid to Eligible Borrowers as provided in Section 6.5.2 of this Stipulated Judgment and Injunction will revert to CFC.

6.3.13 *Second or Junior Liens.* Loan modifications contemplated in Section 6 of this Stipulated Judgment and Injunction shall be made without consideration of second or junior liens on mortgaged properties. CFC does not expect that the presence of second or junior liens will impede Eligible Borrowers from receiving a loan modification offer under Section 6 of this Stipulated Judgment and Injunction.

6.4     *RELOCATION ASSISTANCE PROGRAM.*

Through the Termination Date, payments will be provided to borrowers who are unable to retain their homes in accordance with this Section 6.4.

6.4.1 *Eligibility.* Borrowers under CFC Residential Mortgage Loans that were serviced by a CFC Servicer on June 30, 2008 (whether or not they are Qualifying Mortgages), are currently serviced by a CFC Servicer and are subject to a foreclosure sale date on or before the Termination Date, will be offered an agreement under which they can receive a cash payment to assist with the Borrower's transition to a new place of residence ("*Relocation Assistance payment*") in exchange for voluntarily and appropriately surrendering the residence that secures the mortgage loan at the time of the foreclosure sale. Borrowers who are eligible for, or receive, payments under the Foreclosure Relief Program may also receive a Relocation Assistance payment.

6.4.2 *Amount.* The amount of Relocation Assistance payments offered to any Borrower will be in the discretion of CFC or its delegee according to its or their assessment of the individual circumstances of the Borrower (*e.g.*, number of dependents or amount of moving expenses).

6.4.3 *Timing of Payments.* Relocation Assistance payments shall be made to a Borrower no later than fourteen days following the Borrower's voluntary and appropriate surrender of the residence that secures the mortgage loan.

6.4.4 *Payment Projection.* CFC projects that, from October 1, 2008, through December 31, 2010, Relocation Assistance payments will be made to 35,000 borrowers on a nationwide basis in a total amount of more than $70,000,000.

6.5 **FORECLOSURE RELIEF PROGRAM.**

Payments shall be made available to borrowers who experienced a foreclosure sale, or who were 120 days or more delinquent in making mortgage payments soon after their loans were originated, in accordance with this Section 6.5.

6.5.1 *Payment.* California is allocated $27,950,101.

6.5.2 *Individual Allocation.* A Borrower will be eligible for payments under the Foreclosure Relief Program if the Borrower:

(a) Has a CFC-Originated Residential Mortgage Loan secured by owner-occupied property;

19

(b)    The first payment on the CFC-Originated Residential Mortgage Loan was due between January 1, 2004 and December 31, 2007;

(c)    Six or fewer payments were made on the CFC-Originated Residential Mortgage Loan; and

(d)    The CFC-Originated Residential Mortgage Loan was foreclosed or is 120 days or more delinquent as of the Commencement Date.

6.5.3    *Expansion of the Foreclosure Relief Program.*    The Office of the Attorney General of the State of California may expand the Foreclosure Relief Program to cover additional Borrowers or limit the Foreclosure Relief Program to restrict the participation of Borrowers (provided that at least those borrowers who made three or fewer payments over the life of the CFC-Originated Residential Mortgage Loan are covered).

6.5.4    *Communications.*    CFC and the Office of the Attorney General of the State of California shall consult as to the form of any communication sent to Borrowers who are to receive Foreclosure Relief Program payments.

6.5.5    *Unallocated Funds.*    Funds allocated to Borrowers in the State of California who choose not to participate in the Foreclosure Relief Program or who cannot be located after commercially reasonable efforts shall be available to the Office of the Attorney General for re-allocation to Borrowers under this program at the direction of the Office of the Attorney General.

6.5.6    *Release.*    In order to receive payments under the Foreclosure Relief Program, Borrowers will be required to execute a release in accordance with Section 6.7.1. Borrowers offered payments under this Foreclosure Relief Program whose loans have not yet been foreclosed shall be afforded at least a three month period to decide whether to execute the release to permit them to determine whether they wish to raise claims covered by the release.

6.6    *REPORTING REQUIREMENTS.*

6.6.1    *Eligible Borrowers in Qualifying Mortgages.*

20

(a)    On a quarterly basis through June 30, 2010, CFC shall report the following information to the Office of the Attorney General of the State of California:

(1)    The names and addresses of Eligible Borrowers in the State of California in Qualifying Mortgages who received loan modification offers under Section 6 of this Stipulated Judgment and Injunction, and for whom loan modifications were concluded;

(2)    For all loan modifications under Section 6 of this Stipulated Judgment and Injunction concluded within the reporting period in the State of California, the original and modified loan terms, and the amounts of late/delinquency fees waived, loan modification fees waived, and prepayment penalties waived by CFC pursuant to Section 6 of this Stipulated Judgment and Injunction;

(3)    For a sample of Eligible Borrowers in Qualifying Mortgages for whom CFC was unable to procure a loan modification offer under Section 6 of this Stipulated Judgment and Injunction during the reporting period (which sample shall be no less than 5% of all such Eligible Borrowers), the factors preventing a loan modification offer;

(4)    The number and total amount of Relocation Assistance payments made to borrowers in the State of California during the reporting period;

(5)    Delinquency data on active loans with first payment due dates between January 1, 2004, and December 31, 2007, that are secured by owner occupied residential property in the State of California, broken down by type of loan; and

(6)    Aggregated delinquency data on all loans modified under Section 6 of this Stipulated Judgment and Injunction for Eligible Borrowers in the State of California.

21

STIPULATED JUDGMENT AND INJUNCTION

(b)   CFC shall provide annual reports to the Office of the Attorney General of the State of California that include the information specified in Section 6.6.1(a) for the periods July 1, 2010 through June 30, 2011; and July 1, 2011 through June 30, 2012.

6.6.2   *Other Loan Modifications*.   With the same frequency as specified in Section 6.6.1, CFC will provide to the Office of the Attorney General of the State of California a report detailing the numbers and types of modifications concluded on first-lien residential mortgage loans secured by owner-occupied property in the State of California (other than Qualifying Mortgages) and the total unpaid principal balance of such modified loans.

6.6.3   *Compliance Monitor*.  CFC will appoint an employee as the Compliance Monitor for this agreement.  The Compliance Monitor will be responsible for (a) making reports to the Office of the Attorney General of the State of California under this Stipulated Judgment and Injunction and (b) receiving and responding to complaints from States or from individual borrowers concerning the operation of the loan modification program.

6.7   **RELEASES**

6.7.1   *Releases from Borrowers*.   Borrowers to whom payments under the Foreclosure Relief Program are offered shall, as a condition of receiving such payments, be required to execute and return to CFC a release of claims that includes the following language:

In consideration for the payment we are to receive under the Foreclosure Relief Program, we release Countrywide Financial Corporation and its affiliates and their respective directors, officers, employees and agents (except brokers) from all civil claims, causes of action, any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort (including, but not limited to, personal injury and emotional distress),

22

arising under any source whatsoever, including any statute, regulation, rule, or common law, whether in a civil, administrative, arbitral or other judicial or non-judicial proceeding, whether known or unknown, whether or not alleged, threatened or asserted by us or by any other person or entity on our behalf, including any currently pending or future purported or certified class action in which we are now or may hereafter become a class member, that arise from or are in any way related to CFC Loan No. _____, including, without limitation, the origination of that loan (and any representations or omissions made during that origination process), the terms and conditions of that loan, and the servicing or administration of that loan following its origination.

6.8    *Miscellaneous.*

6.8.1    *No Third Party Beneficiaries Intended.*   Section 6 of this Stipulated Judgment and Injunction is not intended to confer upon any person any rights or remedies, including rights as a third party beneficiary.   Section 6 of this Stipulated Judgment and Injunction is not intended to create a private right of action on the part of any person or entity other than the parties hereto.

6.8.2    *Confidentiality.*   The Office of the Attorney General of the State of California agrees that all confidential information disclosed to it by BAC or CFC or any of their Affiliates shall be kept confidential, except to the extent required by law, regulation or court order (and in such case, only upon prior written notice to the disclosing party). The periodic reports to be provided pursuant to Section 6.6 of this Stipulated Judgment and Injunction shall be considered records of an investigation conducted by the Office of the Attorney General.

7.    Except to the extent an earlier date is specified or the provisions of Section 6 of this Stipulated Judgment and Injunction are earlier terminated according to the terms hereof, the obligations of CFC under Section 6 of this Stipulated Judgment and Injunction shall terminate on the Termination Date. Provided, however, that no termination of the obligations under Section 6 of this Stipulated Judgment and Injunction shall modify or terminate the terms of any

23

STIPULATED JUDGMENT AND INJUNCTION

1   loan modification entered into pursuant to Section 6.3 of this Stipulated Judgment and

2   Injunction.

3        8.   On entry of this Stipulated Judgment and Injunction, CFC shall pay the sum of

4   $1,700,000 to the Office of the Attorney General, to cover the costs of investigating and

5   prosecuting this matter.

6        9.   All documents and notices to be provided to any party under this Judgment are

7   sufficient if given by nationally recognized overnight courier service or personal delivery to the

8   named party at the address below:

9

10       A.   If to Defendants:

11   John Beisner
    Brian Boyle

12   O'MELVENY & MYERS LLP
    1625 Eye Street, N.W.

13   Washington, D.C. 20006

14

15       B.   If to the Attorney General:

16   Benjamin G. Diehl
    Office of the California Attorney General

17   300 S. Spring St., Ste. 1702
    Los Angeles, CA 90013

18

19   and

20   Kathrin Sears
    Office of the California Attorney General

21   455 Golden Gate Ave., Ste. 11000
    San Francisco, CA 94102

22   Notice is effective when delivered personally or on the business day after it is sent by nationally

23   recognized courier service for next day delivery. Any party may designate some other person to

24   receive Reports or notices or change its notice address by giving notice in accordance with this

25   paragraph.

26       10.   This Stipulated Judgment and Injunction constitutes a full resolution, complete

27   settlement, and release of all claims as between Plaintiff the People the State of California and

28   the Countrywide Defendants regarding the business practices identified in the above captioned

24

STIPULATED JUDGMENT AND INJUNCTION

1     action for events occurring before the entry of this Stipulated Judgment and Injunction.  This

2     Stipulated Judgment and Injunction does not resolve or release, but instead specifically

3     preserves, any claims Plaintiff the People of the State of California may have as to Angelo

4     Mozilo or David Sambol.

5            11.    The Countrywide Defendants shall maintain and provide information to and

6     cooperate fully with the Attorney General in connection with the prosecution of the separate

7     action, *People of the State of California v. Countrywide Financial Corporation, et al.*, initially

8     filed in this court and assigned case number LC081846, as to defendants Angelo Mozilo and

9     David Sambol.  This shall include, but is not necessarily limited to, attending depositions, trials

10    or hearings on 25-days notice, without the necessity of a subpoena or personal service;

11    providing any documents and other tangible things requested by the Attorney General on 30-

12    days notice, without the necessity of a subpoena or personal service and without objection; not

13    objecting to efforts by the Attorney General to obtain documents or other discovery from any

14    other named defendant to this action or any third party; and protecting, preserving and

15    maintaining all records and correspondence which are now in or later come into their

16    possession, custody or control, that were sent to, received from, or in any way relate to Angelo

17    Mozilo, David Sambol, or any of their representatives.

18           12.    Plaintiff and the Countrywide Defendants agree that nothing in this Stipulated

19    Judgment and Injunction as to such defendants is to be construed as a bar to Plaintiff continuing

20    its separate action against defendants Angelo Mozilo, David Sambol, and Does 1-100,

21    inclusive.

22           13.    Should any of the Countrywide Defendants resolve matters specifically set forth

23    in the allegations of the Complaint filed in this action for conduct which occurred before the

24    entry of this Stipulated Judgment and Injunction in actions brought by Attorneys General of

25    other states on terms that are different than those contained in this Stipulated Judgment and

26    Injunction (other than terms offered by CFC but not accepted by the Office of the Attorney

27    General of the State of California), the Countrywide Defendants will provide a copy of those

28    terms to the Office of the Attorney General for review.  If, after review, the Office of the

25

STIPULATED JUDGMENT AND INJUNCTION

1   Attorney General determines the terms of such resolutions are, taken as a whole, more

2   favorable than those contained in this Stipulated Judgment and Injunction, then the

3   Countrywide Defendants shall stipulate that this Stipulated Judgment and Injunction shall be

4   amended to reflect all of such terms in place of the terms hereof.

5       14.    Nothing in this Stipulated Judgment and Injunction shall be construed as

6   relieving any of the parties subject to this Stipulated Judgment and Injunction of their obligation

7   to comply, or as prohibiting any of those parties from complying, with all applicable state and

8   federal laws, regulations or rules, nor shall any of the provisions of this Stipulated Judgment

9   and Injunction be deemed to be permission to engage in any acts or practices prohibited by such

10   laws, regulations, or rules.

11       15.    This Court shall retain jurisdiction over this matter for the purposes of (a)

12   enabling the Attorney General to apply, at any time, for enforcement of any provisions of this

13   Stipulated Judgment and Injunction and for sanctions or other punishment for any violation of

14   this Stipulated Judgment and Injunction; and (b) enabling any party to this Stipulated Judgment

15   and Injunction to apply, upon giving 45 days written notice to all other parties, for such further

16   orders and directions as might be necessary or appropriate either for the construction or

17   carrying out of this Stipulated Judgment and Injunction or for the modification or termination of

18   one or more injunctive provisions of this Stipulated Judgment and Injunction.

19       16.    This Stipulated Judgment and Injunction shall take effect immediately upon

20   entry by the clerk, and the clerk is ordered to enter it forthwith.

21

22   Dated:  **OCT 2 0 2008**

23                  Hon.
               Judge, California Superior Court

24                  **RICHARD B. WOLFE**
               **JUDGE**

25

26

27

28

STIPULATED JUDGMENT AND INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

# BENEFICIARY STATEMENT PURSUANT TO CAL.CIVIL CODE§2943

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV10- 6742 DMG (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

# FOR OFFICE USE ONLY

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

NORAIR AND GOHARIK SAAKIAN

PLAINTIFF(S)

v.

BANK OF AMERICA HOME LOANS,
MERS CORP.
SEE ATTACHED

DEFENDANT(S).

CASE NUMBER

# CV10-06742-DMG(Ex)

**SUMMONS**

TO:   DEFENDANT(S): BANK OF AMERICA HOME LOANS, RECONTRUST COMPANY
BANK OF NEW YORK MELLON, MERS CORPORATION

A lawsuit has been filed against you **FOR OFFICE USE ONLY**

Within _21_ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _NORAIR AND GOHARIK SAAKIA_ whose address is _13606 DELANO ST VAN NUYS CA. 91401_ _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: SEP 10 2010

By: **ANDRES PEDRO**

Deputy Clerk

*(Seal of the Court)* 1202

*[Use 60 days if the defendant* **FOR OFFICE USE ONLY** *or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Norair and Goharik Saakian, *Plaintiff Pro Per*
13606 Delano Street
Van Nuys, CA. 91401
Fax: (404) 393-3134
Without Counsel
    *NO PHONE #*

UNITED STATES DISTRICT COURT OF CALIFORNIA
CENTRAL DIVISION

| | |
|---|---|
| NORAIR SAAKIAN and GOHARIK SAAKIAN, | ) CASE NO.: |
| | ) |
| Plaintiff(s), | ) VERIFIED COMPLAINT FOR DAMAGES: |
| vs. | ) COUNT I.  QUIET TITLE ACTION, DECLARATORY JUDGMENT PURUSANT TO F.R.C.P. 57 |
| BANK OF AMERICAN HOME LOANS, *Fictitious Party* | ) COUNT II.  VIOLATION OF F.D.C.P.A |
| BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK as Trustee for Loan Trust 2007-HY3 Mortgage Pass through Certificates Series 2007-HY3., *an en legis being used to conceal fraud* | ) COUNT III. VIOLATION OF CAL.CIVIL CODE 2932.5 <br> ) COUNT IV. VIOLATION OF CAL.CIV CODE 2923.5 <br> ) COUNT V.  VIOLATION OF CAL.CIV CODE 2015.5 |
| RECONTRUST COMPANY., *fraudulent Trustee* | ) COUNT VI. VIOLATION OF CAL.PENAL CODE §115 <br> ) COUNT VII. VIOLATION OF CAL.PENAL CODE§530.5 |
| MERS (Mortgage Electronic Registration System) now doing business as XYX Corporation *Fraudulent Entity* | ) COUNT VIII.DEFECTIVE DEED OF TRUST <br> ) COUNT IX.  VIOLATION OF RICO ACT <br> ) COUNT X.   VIOLATION USC TITLE 18, SECTION 241, <br> ) COUNT XI.  VIOLATION USC TITLE 18, SECTION 242, |
| AND DOES (Investors) 1-10 | ) COUNT XII. VIOLATION OF R.E.S.P.A DECLARATORY RELIEF |
| Defendant(s), | ) (TRIAL BY JURY DEMANDED) |

COMES NOW, the Plaintiff (s) Noriair and Goharik Saakian , a husband and wife duly situated in the state of California Republic. Plaintiff(s) are the owners of record for the property knows as 13606 Delano Street, Van Nuys CA 91401, further described as APN No: 2330-017-006, Instrument No: 20070039269.

Plaintiff Norair and Goharik Saakian
13606 Delano Street, Van Nuys, CA 91401

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☒) <br> NORAIR AND GOHARIK SAAKIAN | DEFENDANTS <br> BANK OF AMERICA HOME LOANS, <br> RECONTRSUT COMPANY, <br> BANK OF NEW YORK MELLON, MERS CORPORATION, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> NORAIR AND GOHARIK SAAKIAN | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $ 543,775.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
QUIET TITLE ACTION USC 1441

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number:    CV10-06742-DMG (Ex)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date SEPTEMBER 10, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |