FILED

Norair and Goharik Saakian, *Plaintiff Pro Per*
13606 Delano Street
Van Nuys, CA. 91401
Fax: (404) 393-3134
Without Counsel

2011 JAN 14  PM 2: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

# UNITED STATES DISTRICT COURT OF CALIFORNIA
## CENTRAL DIVISION

| | |
|---|---|
| NORAIR SAAKIAN and GOHARIK SAAKIAN, | ) CASE NO.: CV10-06742-DMG (EX) |
| | ) ASSIGNED TO: Hon. Dolly M. Gee |
| Plaintiff(s), | ) |
| vs. | ) **PLAINTIFFS OBJECTION TO DEFENDANTS MOTION TO DISMISS** |
| BANK OF AMERICAN HOME LOANS, *Fictitious Party* | ) |
| BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK as Trustee for Loan Trust 2007-HY3 Mortgage Pass through Certificates Series 2007-HY3., *an en legis being used to conceal fraud* | ) |
| | ) |
| RECONTRUST COMPANY., *fraudulent Trustee* | ) Date: January 24, 2011 (cancelled by the court) |
| MERS (Mortgage Electronic Registration System) now doing business as XYX Corporation *Fraudulent Entity* | ) **Complaint Filed: September 10, 2010** |
| | ) |
| AND DOES (Investors) 1-10 *et al,* | ) |
| Defendant(s), | ) |
| | ) |

*Plaintiff Norair and Goharik Saakian
13606 Delano Street, Van Nuys, CA 91401*

COMES NOW, the Plaintiff(s) Norair Saakian and Goharik makes this Objection to the

Defendants Motion to Dismiss. The court should be aware that the Defendants Motion is

saturated with speculation and for the most part HEARSAY, which is permitted by the rules of

1  court. It appears the paralegal(s) of the Defendants counsel is attempting to adjudicate this case

2  in his/her own opinions and thoughts not supported by any evidence.  Due to most of the Motion

3  to Dismiss being mostly pertaining to wild theories and speculation as well as HEARSAY, the

4  Plaintiff will attempt to address several issues pertaining to the Motion.

5

6      The following is the Plaintiffs response point by point regarding any relevant claims

7  made by the Defendants.

8

9  **IV- DEFENDANTS ARE REQUIRED TO PRODUCE THE NOTE IN AN**

10  **ACTION BROUGHT BY PLAINTIFF-**

11      As in most actions against banks that fraudulently attempt to foreclose on property in

12  Non-Judicial foreclosures, the bank often makes this false statement. The defendants should be

13  aware that this is no longer a Non-Judicial foreclosure, as instead it is Judicial foreclosure as the

14  Plaintiff has filed a Complaint obviously. Again this is more nonsense and in turn a run and hide

15  technique on the part of the defendants, to avoid producing the genuine Promissory Note

16  pursuant to the California Uniform Commercial Code.

17

18  **V- PLAINTIFFS MISCHARACTERIZED DEFENDANTS**

19      Defendants takes another evasive position as stating that MERS is the only entity listed

20  on the loan origination documents. This is to say the least ridiculous, as all other defendants

21  claim to be the Holder and owner of the Mortgage Deed, Note and loan. It is apparent BAC,

22  Recontrust , and  Bank of New York Mellon intend to avoid any responsibility of the loan as

23  well as ownership, but instead feels it can foreclose on the property legally.

24

25      Defendants is playing word ping pong, as it accepts no accountability or claims any

26  ownership of the loan. The Plaintiff believes that neither of the defendants own the loan, and in

27  its Motion to Dismiss in its entirety nothing is mentioned about who will stand up and take its

28  position as owner or holder in due course.

PLAINTIFF'S NORAIR AND GOHARIK SAAKIAN REQUEST AND OR MOTION FOR EXTENSION     PAGE  2

## VI- PLAINTIFFS CANNOT TENDER PAYMENT UNTIL THE REAL PARTY IN INTEREST IS DETERMINE

Defendants allege they are entitled to Tender of payment but has not demonstrated to the Plaintiff or court why they are entitled to such a tender. They have expressed many times in their Motion to Dismiss, that they are not the Holder in Due course, or in the alternative attempts to avoid proofing that position. It is clear the defendants are not the entitled to any payments or tender, as it has clearly stated it does not own the loan. It is simple the defendants as opposed to theory, unsupported hearsay and speculation, merely could just provide their proof of standing to foreclose, as well as the Promissory Note and assignments to prove their agency status.

However the Plaintiff knows they will and cannot provide the necessary documentation to the courts or the Plaintiff. Plaintiff will make this clear to the court and all defendants, provide their proof of ownership, by presenting the Original Note, Allonge, Assignments and chain of title that solidifies their position as Lender, or party subject to payment and the Plaintiff will settle the account and tender and legal payments due to the defendants.

## VII- PLAINTIFF DOES STATE CLAIMS FOR RELIEF CLEARLY.

Plaintiff does make several claims in regard to the Complaint. Those claims are simple , the Plaintiff is the owner of the property and makes that claim clear on the face of the suit. Defendants are not the Real Party in interest or holder in due course. Until proven the claim is obvious, ownership must be reconveyed to the homeowner/Plaintiff.

## VIII COUNT I- QUIET TITE ACTION DOES NOT FAIL

Defendants claim that Plaintiffs Complaint for Quiet Title fails to plead the elements is objected, as in the Complaint the Plaintiff has addressed tender, clearly stating that Plaintiff is willing to tender payment to the lawful and legal owner and holder in due course, upon which

1  upon information and belief is not BAC or any of the defendants attempting to fraudulently

2  foreclose of the Plaintiff property.

3       Thus the Plaintiff believes and has information to support its position that neither

4  defendant has legal standing to commence a foreclosure. Therefore until it is proven by the

5  evidence and or the defendants stipulate to the court with proof that they are the CREDITOR,

6  then addressing tender is a moot point at this juncture. To be clear the Plaintiff upon information

7  and belief and a search of the Los Angeles County Recorder's office lacks any legal transfer of

8  ownership to any of the Defendants. Pursuant to Cal.Civ.Code defendants lacks standing to

9  institute a foreclosure. To also make it clear and address these minor issues Plaintiff claims all

10  rights of ownership of the subject property. Furthermore neither defendant is named on the

11  original Deed of Trust, which is also defective and consists of fraud.

12

13       However Defendants does admit that it was *not* part of the original loan process, yet

14  considers itself an entity with standing to foreclose, and has not demonstrated the ability to do so.

15  Defendants make the silly notion that Plaintiff must allege tender to third party acting as if they

16  are the lender of the loan. For the record if it is determined by the evidence that either defendant

17  is the *creditor* or has standing to commence a foreclosure in its name, then Plaintiff will offer

18  tender at such time. Any such presumptions of legal ownership by the defendants at this time are

19  hearsay.

20      **IX COUNT II-FDCPA ABSOLUTELY APPLY TO ALL DEFENDANTS**

21

22       Defendants erroneously states that the FDCPA does not apply to them, where they come

23  up with this awful falsity is beyond the Plaintiff(s) wildest imagination. One area to support the

24  Plaintiffs position as that of a debt collector is the Federal Trade Commission website (see

25  http://www.ftc.gov/bcp/edu/pubs/consumer/homes/rea10.shtm) that address in more detail that

26  indeed "By law, a debt collector is a person who regularly collects debts owed to others. Your

27  mortgage servicer is considered a debt collector". Furthermore A debt collector is any person or

28  agency, other than the creditor, who regularly collects debts owed to others. Under a 1986

PLAINTIFF'S NORAIR AND GOHARIK SAAKIAN REQUEST AND OR MOTION FOR EXTENSION   PAGE 4

1   amendment to the Fair Debt Collection Practices Act, this also includes attorneys who collect

2   debts on a regular basis.

3        Plaintiff(s) also denies any statement that ReconTrust Company is a Trustee pursuant to

4   the Deed of Trust as no evidence has been presented to support it. Furthermore the defendants

5   have not presented any evidence that they are other than third party interveners not subject to

6   subrogation. BAC Home Loans Servicing is just that a servicer, and as well the Plaintiff upon

7   information and belief contends that neither defendant can provide proof of their status of any

8   sort.

9   ## X. COUNT III- DEFENDANTS DID VIOLATE CAL.CIVIL CODE 2932.5

10

11       Defendants claims Plaintiff misread Cal. Civil Code 2923.5. Plaintiffs reject that notion

12  as no legal assignment pursuant to 2932.5 has been filed. The defendant further attempts to

13  support a false position that MERS has any authority to act as a Nominee and or beneficiary.

14  Plaintiff can cite several cases that hold under no uncertain terms that MERS does not have the

15  right or interest in any property worldwide.

16  *MERS is not a mortgage lender; nor does it ever own or have any beneficial interest in the*

17  *note or mortgage. See, e.g., Merscorp, Inc. v. Romaine, No. 9688/01, slip op. at 2 n.3 (N.Y. Sup.*

18  *Ct.,Suffolk Co. May 12, 2004); Informal Op. New York State Att'y Gen 2001-2 (April 5, 2001),*

19  *2001 N.Y. AG LEXIS 2; R. at 727-28.*

20       The United States Bankruptcy Court for the Eastern District of California has issued a

21  ruling dated May 20, 2010 in the matter of In Re*: Walker, Case No. 10-21656-E-11* which found

22  that MERS could not, as a matter of law, have transferred the note to Citibank from the original

23  lender, *Bayrock Mortgage Corp.* The Court's opinion is headlined stating that MERS and

24  Citibank are not the real parties in interest.

25       The court found that MERS acted "only as a nominee" for Bayrock under the Deed of

26  Trust and there was no evidence that the note was transferred. The opinion also provides that

27  "several courts have acknowledged that MERS is not the owner of the underlying note and

28  therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose on

PLAINTIFF'S NORAIR AND GOHARIK SAAKIAN REQUEST AND OR MOTION FOR EXTENSION       PAGE  5

the property secured by the deed", citing the well-known cases of In Re Vargas (California Bankruptcy Court), *Landmark v. Kesler (Kansas decision as to lack of authority of MERS), LaSalle Bank v. Lamy (New York), and In Re Foreclosure Cases (the "Boyko" decision from Ohio Federal Court).*

The opinion states: "Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS *does not own the underlying notes,* this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."

Read that again: "Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note *IS VOID UNDER CALIFORNIA LAW."* This conclusion was based upon California law cited in the opinion that the note and the mortgage are inseparable, with the former being essential while the latter is "an incident", and that an assignment of the note carries the mortgage with it, "while an assignment of the latter [the mortgage] alone is a nullity." As MERS must own the note in order to assign the incident deed of trust, MERS is legally precluded from assigning the deed of trust for want of ownership of the note, and cannot assign the note in any event as it never owned it. MERS' lack of ownership interest in promissory note is a matter of decided case law based on a record stipulation of MERS' own lawyers in the MERS v. Nebraska Dept. of Finance decision.

This opinion thus serves as a legal basis to challenge any foreclosure in California based on a MERS assignment; to seek to void any MERS assignment of the Deed of Trust or the note to a third party for purposes of foreclosure; and should be sufficient for a borrower to not only obtain a TRO against a Trustee's Sale, but also a Preliminary Injunction barring any sale pending any litigation filed by the borrower challenging a foreclosure based on a MERS assignment.

The Court concluded by stating: "Since the claimant Citibank, has not established that it is the owner of the promissory note secured by the trust deed, Citibank is unable to assert a claim for payment in this case." Thus, any foreclosing party which is not the original lender which

purports to claim payment due under the note and the right to foreclose in California on the basis of a MERS assignment does not have the right to do so under the principles of this opinion.

This ruling is more than significant not only for California borrowers, but for borrowers nationwide, as this California court made it a point to cite non-bankruptcy cases as to the lack of authority of MERS in its opinion. Further, this opinion is consistent with the prior rulings of the Idaho and Nevada Bankruptcy courts on the same issue that being the lack of authority for MERS to transfer the note as it never owned it (and cannot, per MERS' own contract which provides that MERS agrees not to assert any rights to mortgage loans or properties mortgaged thereby).

Therefore as the defendants well know , their efforts to cite an old outdated case, as opposed to the latest case law which is indeed a California case shows how the defendant paralegal ignores real case law. So the court should not be misled as to the authority of MERS, since courts around the globe has ruled 10-1 against what the defendants states.

Nothing under *California Civil Code §§ 2924 through 2924k* applies, unless there is a legal chain of title for the Deed of Trust with the Note from the original lender *to MERS,* and then to the foreclosing party.

**The First Fatal Flaw** - MERS never takes ownership of the underlying Note, Voiding the "Original" Deed of Trust. Under California Law, the named Beneficiary on the Deed of Trust must have ownership of the underlying Note. MERS consistently claims to be only "Holding the Note" as a Nominee for the original lender, never "Owning the Note".

Why MERS doesn't have ownership of the Note:

1. There is no assignment or endorsement of the Note from the original lender to MERS.
2. The Deed of Trust is not a substitute for an Assignment or legal transfer of the Note from the Original lender to MERS.
   *"It is well established law in the Ninth Circuit that the assignment of a trust deed does not assign the underlying promissory note and right to be paid, and that the security interest is incident of the debt." Rickie Walker case, see attached*

PLAINTIFF'S NORAIR AND GOHARIK SAAKIAN REQUEST AND OR MOTION FOR EXTENSION      PAGE 7

3. MERS is a mortgage exchange not unlike a stock exchange. It allows banks to buy and sell home mortgages much like stock.  Stock exchanges don't own the stock on their exchange, only the investors do.

4. A Nominee in California cannot own the Note,
*"The word "nominee" in its commonly accepted meaning, connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him."*
<u>Cisco v. Van Lew, 60 Cal.App.2d 575, 583-584, 141 P.2d 433, 438.</u>

5. In California, a Note payable to the original lender is not a bearer instrument; the original lender must indorse or assign the Note to MERS.
See Cal Com. Code §§<u>3109,3201,3203,3204.</u> and Rickie Walker case Order, and P&A pg6 attached below

6. MERS requires that the owner of the Note never claim MERS as a "Note-Owner" MERS Membership Rule 8 Foreclosure, Section 2(a)(i), page 25, 26, see attached below

7. MERS consistently argues in court that it does not own the promissory notes, <u>MERS v. NEBRASKA DEPARTMENT OF BANKING AND FINANCE No. S-04-786,</u> see attached below

8. *Finally, Moeller v. Lien and CCC § 2924 DOES NOT "EXPRESSLY" EXCLUDE OR SUPERCEDE CA Commercial Code § 3301, OR ANY OTHER CA LAWS!*
*In the case of California Golf, L.L.C. v. Cooper, 163 Cal. App. 4th 1053, 78 Cal. Rptr. 3d 153, 2008 Cal. App. LEXIS 850 (Cal. App. 2d Dist. 2008), the Appellate Court held that <u>the remedies of 2924h were not exclusive.</u>*

9. U.S. Supreme Court decision, Carpenter v. Longan (Carpenter v. Longan, 83 U.S. 271, 21 L.Ed. 313 [1873])):
"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. Case law in virtually every state follows Carpenter."

Deed of Trust is also void, without a recorded assignment of the Deed of Trust for each transfer of the Note:

1. MERS Involvement in the loan effectively stripped the deed of trust lien from the land and a foreclosure is not legally possible, <u>*Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619 (Mo.App. E.D.,2009)*,</u> attached below

2. Any assignment of the Deed of Trust & Note from MERS to a successor is void and fraudulent.
RICKIE WALKER CASE, see attached below

Therefore, MERS definition of "Holding the Note" is not the legal equivalent of "Owning the Note"; <u>*California Civil Code section 2924*</u> for foreclosure only applies if MERS owned the note.

**The Second Fatal Flaw - MERS tracking system is not a legal chain of title and the debt may be uncollectible.** When a Note is sold, it has to be endorsed the same way you basically sign a check for deposit or cashing.

Under California Law the Note is not a bearer instrument, but an instrument payable only to a specifically identified person, per California Commercial Code §3109; any transfer of the Note requires a legal Negotiation, Endorsement and a physical delivery of the note to the transferee to perfect the transfer, per California Commercial Codes §§3201, 3203, 3204. see attached Rickie Walker Order.

*"MERS Basics "Registration vs. Recording. (PPT Slide)*

- *MERS is neither a system of legal record nor a replacement for the public land records.*
- *Mortgages must be recorded in the county land records.*
- *MERS is a tracking system. <u>No interests are transferred on the MERS® System, only tracked</u>.",*
    MERS Southeast Legal Seminar - MERS Basics slide 7, see attached below.

*"A mortgage note holder can sell a mortgage note to another in what has become a gigantic secondary market. . . . For these servicing companies to perform their duties satisfactorily, <u>the note and mortgage were bifurcated."</u>*
MERSCORP President and CEO, R.K. Arnold, *Yes, There is Life on MERS*, Prob.& Prop., Aug. 1997, at p.16, see attached below

**Clear Title May Not Derive From A Fraud (including a bona fide purchaser for value).**
In the case of a fraudulent transaction California law is settled. The Court in Trout v. Trout, (1934), 220 Cal. 652 at 656 made as plainer:
*"Numerous authorities have established the rule that an instrument wholly voids, such as an undelivered deed, a forged instrument, or a deed in blank, cannot be made the foundation of a good title, even under the equitable doctrine of bona fide purchase. Consequently, the fact that defendant Archer acted in good faith in dealing with persons who apparently held legal title, is not in itself sufficient basis for relief."•* (Emphasis added, internal citations omitted).

This sentiment was clearly echoed in 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279 at 1286 where the Court stated:

*"It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties."* (Emphasis added).

*In Alliance Mortgage Co. v. Rothwell (1995) 10 Cal. 4th 1226, 1231 [44 Cal. Rptr. 2d 352, 900 P.2d 601],* the California Supreme Court concluded that:

"'the antideficiency laws were not intended to immunize wrongdoers from the consequences of their fraudulent acts' " and that, if the court applies a proper measure of damages, "'fraud suits do not frustrate the antideficiency policies because there should be no double recovery for the beneficiary.' " (Id. at p. 1238.)

Therefore, any attempt to collect by other than the original lender may be impossible without a legal chain of title, because MERS tracking system is not a legal chain of title. In closing MERS is was not registered or licensed to do business in the State of California, furthermore is not entitled to defend this action until it is reinstated by the Secretary of State.

Case precedents supporting MERS lack of standing. **California** May 20, 2010, in a bankruptcy case called *In re Walker*, Case no. 10-21656-E–11. The court held that *MERS could not foreclose* because it was a mere nominee; and that as a result, plaintiff Citibank could not collect on its claim. The judge stated:

**"Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that *MERS had no interest it could transfer to Citibank*. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. *Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law.***

The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often…. Zinc Carbonate Co. v. First National Bank, 103 Wis 125, 79 NW 229. American Express Co. v. Citizens State Bank, 194 NW 430.*w.*

**XI. COUNT IV- VIOLATION OF CAL.CIVIL CODE 2923.5 and 2924.** Plaintiff contends that this allegation and claim has been fully explained, and Plaintiff feels that the defendants understand the allegations quite well as it is spelled out entirely. Therefore no further explanation is warranted. Plaintiff advises defendants to re-read the allegation. Facts of defendant's failure to abide by Cal. Civil Code 2923.5 and 2924 and the evidence thereof are forthcoming. The court should be aware that the defendants do not deny that this allegation is without merit.

## XII. COUNT V- VIOLATION OF CAL.CIV CODE 2015.5

Plaintiff has clearly stated the violation committed. Further defendants make reference that it does not apply, but does not say how it doesn't apply. As well the defendants speak more about Cal. Civil Code 2923.5 and less about Cal.Civil Code 2015. Violation of Cal. Civil Code 2923 was addressed in a previous count.

## XIII.COUNT VI- VIOLATION OF CALIFORNIA PENAL CODE§115 and COUNT VII VIOLATION OF PENAL CODE SECTION 530.5.

Plaintiff will file a Criminal Complaint with the Attorney General Office for violation of this penal code against the Plaintiff. Should the court determine that the cause is invalid as a cause of action, the Plaintiff will amend.

## XIV.COUNT VIII- DEFECTIVE DEED

Defendants claim that defective deed is not a cause of action and offers no real proof as to why. For the record defendant makes statements and comments by asserting that the Plaintiff has signed certain documents. Plaintiffs deny any signatures on any documents that have not been inspected for authenticity. Plaintiff therefore advises the defendants to refrain from hearsay, unless it is supported by or witnessed by a party with firsthand knowledge of the events.

The deed is defective on its face, for the following reasons, first it list MERS as a nominee (false) and secondly the Notary committed fraud as at such closing the Notary was not present when any documents were signed. In fact the Deed of Trust was notarized after such a closing commenced. A complaint to the Secretary of State is being filed, a copy of which will be provided to the court in the form of Judicial Notice. As well several signatures on the Deed of Trust and other closing documents appear to be forged. As discussed and proven in Count III MERS has no standing to assign, sell or transfer any obligation to any entity.

## XV.COUNT IX- VIOLATION OF RICO

Defendants claim Plaintiffs does not plead the elements of the claim. Plaintiff contends the cause of action is clear and precise. Furthermore as evidence will be provided both by the Plaintiff and through discovery requests from the defendants, this cause will be easily established

and proven at trial. This response by the defendants is a lot of speculative rhetoric that amounts to ineffective arguments. Plaintiffs don't feel the need to address hearsay or speculation.

The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the congressional purpose as broadly formulated in the Statute. Sedima, SPRL v. Imrex Co., 473 US 479 (1985).

**XVI. COUNT X and XI- VIOLATION OF 18 USC 241 and 18 USC 242**

Defendants claim they are unable to ascertain the Plaintiffs claim. However it should be obvious that ALL the defendants have conspired to deprive the Plaintiff of their property rights. The property rights of the Plaintiff have been violated substantially, and will be further proved. It should be noted that the defendants do not deny the allegation, just requests clarity of the cause of action.

**XVII. COUNT XIII – VIOLATION OF R.E.S.P.A.**

Defendants states that this violation is time barred. The statute of limitations can be extended an additional three years or more upon the actual discovery of violations when all documentation has been proven received. Moreover, federal and state fraud carries no statute of limitations. *12 USC 2614* clearly states that "upon discovery of the fraud" the homeowner has up to 3 years. The court should be aware that the Plaintiff discovered that fraud on or about August 2009. September 2009 the Plaintiff sent a Qualified Written Request to Countrywide Home Loans. The defendants has its fact completely wrong, Plaintiff conducted a mortgage transaction in June 2004 for $316,000. Thereafter Plaintiff refinanced with Metro Lending in February 2007, soon thereafter the loan was again allegedly sold to Countrywide Home Loans in March 2007. BAC acquired Countrywide March 2008.

Notwithstanding Plaintiff sent numerous Qualified Written Request letters to Countrywide and then to BAC Loans which were never responded to in violation of R.E.S.P.A. and many other federal and state law. Based on those facts the Plaintiffs are within their statutory limits to *rescind* the loan for many reasons. Furthermore Countrywide in many states around the country has been known to be the worst predator lender in the country, hence is why the corporation failed. Importantly enough the Attorney General of the State of California sued Countrywide on this fact alone. (See Complaint). Countrywide now BAC Home Loans has not complied with the courts in modifying and or reimbursing consumers for fraudulent loans. Two dozen calls have been to BAC attempting to get relief, and all has been ignored. Defendants however do not deny receiving the Notice to Rescind.

## XIX COUNT XIX- PLAINTIFFS FAIL TO STATE A CLAIM FOR EXEMPLARY AND PUNITIVE DAMAGES

Defendants claims that Plaintiffs have not stated a cause of action. It is obvious the claims supported by the Plaintiff warrants punitive and exemplary damages, as malice, deceit, multiple fraudulent acts and intent are the foundation of all the defendants actions. Defendant's reason or objection is merely denial of the facts.

## XX.COUNT X- PLAINTIFF IS ENTITLED TO COURT COSTS AND FEES

Defendant is definitely entitled to court cost for litigation.

**CONCLUSION-** In closing the Defendants has not denied any of the Plaintiffs allegations, they have only used rhetoric and submitted irrelevant case law to support allegations not made in Plaintiff complaint. As the court should know, around the world banks have been committing severe acts of fraud against homeowners.

**Countrywide Home Loans has also been sued by the Federal Trade Commission** *Federal Trade Commission, Plaintiff, v. Countrywide Home Loans, Inc. and BAC Home Loans Servicing, LP, Defendants, United States District Court for the Central District of California Case No. CV-10-4193 FTC File No. 082 3205. The results were Countrywide was*

1  ordered to pay 108 million dollars for overcharging homeowners for, inflated fees,

2  mishandling loans of thousands of borrowers (see Exhibit A).

3      The defendants in this case must stipulate that they are the creditor, and they have

4  complete ownership of the Note, Mortgage Deeds and has standing to commence a foreclosure

5  action against the Plaintiff. Defendants contend that they are not required to provide the original

6  Note and assignments that prove that they are the Real Party in Interest due to the fact in a Non –

7  Judicial Foreclosure it is not necessary. However defendants must realize that this is no longer a

8  Non Judicial foreclosure since a Complaint has been filed , it now becomes a Judicial

9  foreclosure, which Plaintiff feels the defendants fears tremendously.

10      Defendants upon information and belief are not the Real Party in Interest pursuant to

11  F.R.C.P. Rule 17. Defendants does not have possession of the original promissory note as per the

12  Uniform Commercial Code. See *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 (9th Cir

13  1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested

14  parties that a security interest in instruments has been perfected is actual possession by the

15  secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial

16  Code. *In Re Investors & Lenders, Ltd*. 165 B.R. 389 (Bankruptcy.D.N.J.1994), "Under the New

17  Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest

18  in which must be perfected by possession.

19      Siwooganock Bank in Lancaster NH, in alleged foreclosure suit, failed or refused to

20  produce the actual note which Siwooganock alleges Eva J. Lovejoy owed.

21

22      To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in

23  question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the

24  note; and (4) that a certain balance is due and owing on the note.  See *In Re: SMS Financial LLC.*

25  *v. Abco Homes, Inc.* No.98-50117 February 18, 1999 (5th Circuit Court of Appeals. See  *Pacific*

26  *Concrete F.C.U. V. Kauanoe,*  62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v.*

27  *Yonenaka* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001)

28      The law is clear in all fifty states: unless the foreclosing bank has *possession* of the

original promissory note the home owner signed at the closing, no foreclosure is possible. Why

not? Because without that note, the bank is an inappropriate entity to do the foreclosure (in legal terms, the bank "lacks standing"). The law clearly says that only a "person entitled to enforce" the promissory note may do so, and that term is defined as someone in possession of the note or who has a logical explanation as to why it cannot be produced. A *copy* of the note will not suffice. There might be one hundred copies of the note, but that wouldn't permit one hundred different foreclosures. As one lawyer attending my talk said to me afterwards, "The banks say a copy of the note should be enough, but you can bet they wouldn't take a copy of a *check*!" In any foreclosure action, the home owner should demand to see the original note. If it is not produced, no judge should permit the foreclosure to go forward. In that situation, the foreclosing bank should sit down with the home owner and work out some sort of compromise acceptable to both.

Article 3 of the Uniform Commercial Code (see below) could not be clearer. Only the "person entitled to enforce" the promissory note can sue on it, and that person must either have possession or prove the note has been lost or stolen. But, alas, the courts often get this wrong, most recently in the appalling decision of Bank of New York v. Dobbs, 2009 WL 2894601 (Ohio App. 2009) (The court ignored the UCC and cited to the Restatement of Property (Mortgages) §5.4 for the proposition that an assignment of the mortgage is presumed to be also an intention to assign the note. Of course it is, but intentions are not the same thing as actually doing it—witness my annual New Year Eve vow to exercise and lose weight). Other Ohio courts have reached the correct result: U.S. Bank N.A. v. Marcino, (2009) 181 Ohio App.3d 328. The federal courts have proved sensitive to all this; see, e.g., In re Foreclosure Cases, 2007 WL 3232430 (N.D.Ohio 2007); In re Vargus, 396 B.R. 511 (Bkry. C. D. Cal. 2008) (there are a number of similar cases).

Under UCC §3-502(a)(3) a promissory note is *dishonored* when the maker does not pay it when the note first becomes payable. By itself it does not create a right of physical presentment of the note, but §3-501 does create such a right *if the maker so demands*. Section 3-501(a) defines "presentment" as a demand to pay the instrument made by a "person entitled to enforce an instrument" [the PETE], and under subsection (b)(2) adds that "Upon demand of the person to whom presentment is made, the person making presentment must (1) *exhibit the instrument*" [emphasis added]. Until there is such a presentment, §3-310(b) (the so-called "merger" rule) provides that "the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules

apply: * * * (2) In the case of a note, suspension of the obligation continues until dishonor of the note or until it is paid." [The "until it is paid" language refers to the situation where the note is *never* presented for payment because the maker makes all the required payments and is therefore never in default.] If the obligation is "suspended" it cannot be the basis of a lawsuit until that suspension ends.

If the client wants to pay the mortgage debt, but is leery of paying the wrong entity, he/she should pay the debt into an escrow account and advise the putative assignee of the mortgage that the amount deposited will be available on production of the promissory note or the signing of an indemnity agreement. Such a deposit would be the equivalent of tender of the amount due, so as to avoid late charges; see §3-603 and "Tender of Payment Under UCC §3-604: A Forgotten Defense?," 39 Ohio St. L. J. 833 (1978). The amount could also be paid into court in an interpleader action in appropriate circumstances.

Let's say the "lender" with whom the borrower started is now *out of business*.  The Borrower goes into default.  MERS creates an assignment **from** a lender (that is now defunct) to another entity.  (The original "lender" never transferred anything to any entity on the county records.)  MERS will maintain that it "has the authority" to do an assignment based on a relationship that may or may not still be active.  In most cases where the original "lender" is defunct (is not active) -- you cannot continue contractual relationship with a defunct party.

Therefore the court should deny the defendants Motion to Dismiss entirely on the grounds that their speculation and hearsay in their Motion does not warrant a dismissal and or Strike portions of the Plaintiff's Complaint.

Should the court grant in any way the defendants Motions, the court should do so with leave to amend the Complaint by the Plaintiffs .

1

2    Dated: January 14, 2011

3

4

5                                              Respectfully Submitted,

6

7                                              Norair Saakian, Plaintiff

8

9

10                                             Goharik Saakian, Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A
## FEDERAL TRADE COMMISION LAWSUIT

For Release: 06/07/2010

# Countrywide Will Pay $108 Million for Overcharging Struggling Homeowners; Loan Servicer Inflated Fees, Mishandled Loans of Borrowers in Bankruptcy

Two Countrywide mortgage servicing companies will pay $108 million to settle Federal Trade Commission charges that they collected excessive fees from cash-strapped borrowers who were struggling to keep their homes. The $108 million represents one of the largest judgments imposed in an FTC case, and the largest mortgage servicing case. It will be used to reimburse overcharged homeowners whose loans were serviced by Countrywide before it was acquired by Bank of America in July 2008.

"Life is hard enough for homeowners who are having trouble paying their mortgage. To have a major loan servicer like Countrywide piling on illegal and excessive fees is indefensible," said FTC Chairman Jon Leibowitz. "We're very pleased that homeowners will be reimbursed as a result of our settlement."

According to the complaint filed by the FTC, Countrywide's loan-servicing operation deceived homeowners who were behind on their mortgage payments into paying inflated fees – fees that could add up to hundreds or even thousands of dollars. Many of the homeowners had taken out loans originated or funded by Countrywide's lending arm, including subprime or "nontraditional" mortgages such as payment option adjustable rate mortgages, interest-only mortgages, and loans made with little or no income or asset documentation, the complaint states.

Mortgage servicers are responsible for the day-to-day management of homeowners' mortgage loans, including collecting and crediting monthly loan payments. Homeowners cannot choose their mortgage servicer. In March 2008, before being acquired by Bank of America, Countrywide was ranked as the top mortgage servicer in the United States, with a balance of more than $1.4 trillion in its servicing portfolio.

When homeowners fell behind on their payments and were in default on their loans, Countrywide ordered property inspections, lawn mowing, and other services meant to protect the lender's interest in the property, according to the FTC complaint. But rather than simply hire third-party vendors to perform the services, Countrywide created subsidiaries to hire the vendors. The subsidiaries marked up the price of the services charged by the vendors – often by 100% or more – and Countrywide then charged the homeowners the marked-up fees. The complaint alleges that the company's strategy was to increase profits from default-related service fees in bad economic times. As a result, even as the mortgage market collapsed and more homeowners fell into delinquency, Countrywide earned substantial profits by funneling default-related services through subsidiaries that it created solely to generate revenue.

According to the FTC, under most mortgage contracts, homeowners must pay for necessary default-related services, but mortgage servicers may not mark up the cost to make a profit or charge homeowners for services that are not reasonable or appropriate to protect the mortgage holder's interest in the property. Homeowners do not have any choice in who performs default-related services or the cost of those services, and they have no option to shop for those services.

In addition, in servicing loans for borrowers trying to save their homes in Chapter 13 bankruptcy proceedings, the complaint charges that Countrywide made false or unsupported claims to borrowers about amounts owed or the status of their loans. Countrywide also failed to tell borrowers in bankruptcy when new fees and escrow charges were being added to their loan accounts. The FTC alleges that after the bankruptcy case closed and borrowers no longer had bankruptcy court protection, Countrywide unfairly tried to collect those amounts, including in some cases via foreclosure.

<u>Settlement Terms</u>

The FTC's complaint and settlement order name two mortgage servicers as defendants: Countrywide Home Loans, Inc. and BAC Home Loans Servicing LP, formerly doing business as Countrywide Home Loans Servicing LP. The settlement requires Countrywide to pay $108 million, which will be refunded to homeowners who Countrywide overcharged before July 2008.

In addition, the settlement order prohibits Countrywide from taking advantage of borrowers who have fallen behind on their payments. The defendants continue to service millions of mortgage loans, including tens of thousands of loans involving borrowers in bankruptcy and foreclosure. In the servicing of loans, the defendants are permanently barred from:

- Making false or unsubstantiated representations about loan accounts, such as amounts owed.
- Charging any fee for a service unless it is authorized by the loan instruments, by law, or by the consumer for a specific service requested by the consumer.
- Charging any fee for a default-related service unless it is a reasonable fee charged by a third party for work actually performed. If the service is provided by an affiliate of a defendant, the fee must be within limits set by state law, investor guidelines, and market rates. Defendants must obtain annual, independent market reviews of their affiliates' fees to ensure that they are not excessive.

In addition, Countrywide must advise consumers if it intends to use affiliates for default-related services and, if so, provide a fee schedule of the amounts charged by the affiliates.

The settlement also requires Countrywide to make significant changes to its bankruptcy servicing practices. For example, Countrywide must send borrowers in Chapter 13 bankruptcy a monthly notice with information about what amounts the borrower owes – including any fees assessed during the prior month. The defendants also must implement a data integrity program to ensure the accuracy and completeness of the data they use to service loans in Chapter 13 bankruptcy.

This case was brought with the invaluable assistance of the United States Trustee Program, the component of the Department of Justice that oversees the administration of bankruptcy cases and private trustees. This action represents the FTC's continuing work to help consumers who have been hurt by the economic downturn.

For more information about the case and the FTC's refund program, see www.ftc.gov/countrywide.

The Commission vote to authorize staff to file the complaint and settlement was 5-0. The complaint and settlement were filed in the U.S. District Court for the Central District of California.

The Federal Trade Commission is a member of the interagency Financial Fraud Enforcement Task Force. For more information on the Task Force, visit www.stopfraud.gov.

NOTE: The Commission files a complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. The complaint is not a finding or ruling that the defendants have actually violated the law. Stipulated court orders are for settlement purposes only and do not necessarily constitute an admission by the defendants of a law violation. Stipulated orders have the full force of law when signed by the judge.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP    1-877-FTC-HELP    (1-877-382-4357    1-877-382-4357    ). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 1,800 civil and criminal law enforcement agencies in the U.S. and abroad.

PLAINTIFF'S NORAIR AND GOHARIK SAAKIAN REQUEST AND OR MOTION FOR EXTENSION    PAGE 20

## **PROOF OF SERVICE**

1

2   I certify that on this date I caused a copy of the Notice of Motion and Motion and or

3   Request for Extension of Time, to be placed in a postage-paid envelope addressed to the

4   defendant(s), at the address(s) stated below, which is the last known address(s) of said

5   defendant(s) and deposited said envelope(s) in the United States mail.

6

7   Glenn J. Plattner (State Bar No. 137454)
    **BRYAN CAVE LLP**

8   120 Broadway, Suite 300
    Santa Monica, California 90401-2386

9

10  *Attorney for:*
    BANK OF AMERICA HOME LOANS

11  PO BOX 5170, SIMI VALLEY CA 93062

12

13  RECONTRUST COMPANY
    1800 TAPO CANYON RD, SIMI VALLEY CA 93063

14

15  BANK OF NEW YORK MELLON f/k/a TE BANK OF NEW YORK as TRUSTEE for the ALTERNATIVE

16  LOAN TRUST 2007-HY3
    101 BARCLAY STREET, 4W NEW YORK, NY 10286

17

18  MERS CORPORATION

19  PO BOX 2026 FLINT, MI 48501-2026

20

21  **Dated this 14th Day of January 2011**

22

23

24                              Saakian Goharik, Plaintiff

25

26

27

28

PLAINTIFF'S NORAIR AND GOHARIK SAAKIAN REQUEST AND OR MOTION FOR EXTENSION      PAGE  21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28